(Decided 30th January, 1873.)

---

## Edward K. Cooper *vs.* Charles H. Utterbach.

*Malicious Prosecution—Evidence—How far Judgments conclude parties to the action—Instructions—Practice—Punitive Damages in an action for Malicious Prosecution— When a Defendant in an action for Malicious Prosecution is relieved from Liability, by having acted under the Professional advice of his Counsel— When Malice may be inferred from Want of Probable Cause—Definition of Probable Cause.*

In an action for malicious prosecution in having the plaintiff indicted and tried upon a charge of obtaining money and stock under false pretences, a witness for the defence, a lawyer, in his examination in chief, gave certain testimony, the object of which was to rebut the presumption of malice, by showing that the defendant in instituting the prosecution for which he was sued, had proceeded in good faith, upon the advice of counsel, learned in the law, given upon a full representation of the facts. Upon cross-examination the plaintiff propounded to the witness the following question, stating at the same time

that its object was to ascertain whether all the facts had been communicated to him: "You have stated that with all the facts before you, you advised the defendant that the plaintiff had been guilty of obtaining money under false pretences; please state what were the facts upon which that advice was based?" To this question and the admissibility of the matters inquired of, the defendant objected, for the reason, among others, that the correctness of the opinion of the witness was not in issue, nor were the reasons or grounds on which he based it, but only the fact that he had formed and expressed it to the defendant. HELD:

That the question was proper, the object being to test the good faith of the defendant, by ascertaining whether he or his agents had disclosed all the facts bearing on the guilt or innocence of the accused, in his possession, in his consultation with his legal adviser, and the answer to the question was evidence for the jury.

A suit in Equity was instituted in Virginia, the object of which was to obtain a decree for the sale of certain land conveyed in trust to secure the complainant's debt, being a loan to the respondent, and an appropriation of the proceeds of sale in discharge of the same. The respondent in his answer charged that the complainant cheated him in the transaction of the loan, and pleaded usury as well as fraud. Issues were directed by the Court to a jury to inquire whether fraud or usury had been practiced by the complainant on the defendant; the jury found for the complainant; and the Court thereupon decreed that he was entitled to have the real estate sold for the satisfaction of his debt. Some time after the Equity suit in Virginia was instituted, the respondent was indicted in the Criminal Court of Baltimore city, at the instance of the complainant, for obtaining money and stock from him by false pretences—the charge growing out of the transaction of the loan. The accused was tried, acquitted and discharged, and thereupon brought a suit against the complainant for malicious prosecution. At the trial of this action the plaintiff read certain proceedings and depositions from a duly certified transcript of the record of the Equity suit in Virginia. Both parties, in fact, read from it without objection. The defendant contended that the questions decided between himself and the plaintiff in the Equity suit in Virginia were to be taken as finally settled and concluded between them, and no longer open to controversy, and the Court having determined in that case that the transaction between them was altogether fair on the part of the defendant, and not tainted by fraud or usury, it was no longer competent for the plaintiff to argue, or for the jury to find otherwise than as the Court had pronounced it. HELD:

That the matter directly in issue in the Equity case in Virginia, was the right of the complainant to a lien on certain lands therein, in preference to all

other creditors, and to have said lands sold, and to the extent of that issue the record was conclusive. But that the record was not offered or used by either side, merely to prove the fact of the decree; nor were the depositions used to prove what had been testified to by any particular witness in the cause who had since died or become disqualified; but it would seem they were used by each side as a substitute for the oral examination of witnesses not then before the Court, who had been examined in the Equity case on the several matters involved therein, which were also the subject of investigation in the criminal prosecution and in the present action for malicious prosecution; they thus became original testimony, on which the counsel were at liberty to make such comments, and the jury to form such conclusions as the facts warranted, without regard to the final decree in the case.

The refusal by the Court, in an action for malicious prosecution, to grant a prayer of the plaintiff because of the absence of any sufficient evidence tending to show any design on the part of the defendant to accomplish any private end of his own by the prosecution, and the granting of another prayer, at the instance of the plaintiff, authorizing the jury to find that the prosecution was pursued by the defendant for his private ends, does not present a case of conflicting instructions, as the rejected prayer could have no influence properly on the minds of the jury, it being excluded from their consideration by the action of the Court.

If in an action for malicious prosecution, the jury find that the prosecution originated without probable cause and in malice, they may legitimately, if not necessarily, find from the same premises that the prosecution, if pursued, was persisted in for some private end, as the want of probable cause and malice exclude all public motives, and so finding they may give punitive damages.

In an action for malicious prosecution, it is not sufficient, in the absence of probable cause, for the defendant, in order to relieve himself from liability, to show that he acted *bona fide*, and without malice, under professional advice; the advice must be based upon a full disclosure of all the facts in the defendant's knowledge, or which with due diligence he might have known. The omission of any material fact, by design or otherwise, will render the advice nugatory.

If in an action for malicious prosecution, it appear that the defendant aided and assisted in procuring the arrest and prosecution of the plaintiff, and aided in the prosecution, and that the plaintiff was indicted, tried and acquitted, and there were no circumstances connected with the transaction out of which the criminal prosecution arose, which could induce a reasonable, dispassionate man to believe the plaintiff was guilty of the charge made

against him, and to undertake such a prosecution from public motives, then there was no probable cause for the prosecution, and the jury might infer, in the absence of sufficient proof to satisfy them to the contrary, that the prosecution was malicious in law.

Probable cause means the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the defendant in an action for malicious prosecution, that the plaintiff was guilty of the crime for which he was prosecuted.

APPEAL from the Superior Court of Baltimore City.

The statement of the case as contained in the opinion of the Court, together with the arguments of counsel, will suffice to indicate the legal principles involved and the points decided. Two exceptions were taken by the plaintiff—the first of which is stated in the opinion of the Court.

*Second Exception.*—The plaintiff presented the following prayers:

1. If the jury find from the evidence that the defendant aided and assisted in procuring the arrest and prosecution of the plaintiff in the Criminal Court, and aided and contributed to said prosecution, then the defendant is liable to be sued by the plaintiff in this action, provided the jury, under the instructions of the Court, shall find the other facts necessary to render the said defendant so liable.

2. If the jury shall find that the plaintiff was indicted, tried and acquitted in the Criminal Court of Baltimore city, on the charges set forth in the record of that Court, offered in evidence, and shall find that the defendant was connected with said prosecution, as set forth in the plaintiff's first prayer, and shall further find that there were no circumstances connected with the transaction out of which the said criminal prosecution arose, which would induce a reasonable, dispassionate man to believe the plaintiff to have been guilty of the charge made against

him, and to induce such a man to have undertaken such a prosecution from public motives, then there was no probable cause for said prosecution, and the jury may infer, in the absence of sufficient proof to satisfy them to the contrary, that said prosecution was malicious in law.

3. If the jury shall find that the prosecution was without probable cause, as the same is defined in the second prayer, and shall further find that said prosecution was instigated or set on foot by the defendant's procurement, rashly and recklessly, or that it was designed by the defendant to accomplish any private end of his own, by means of said prosecution, then the jury may find that said prosecution was malicious, notwithstanding they may believe that the defendant had no personal ill-will towards the plaintiff, and the plaintiff is entitled to recover.

4. If the jury shall find that there were any circumstances connected with or growing out of the transaction out of which the prosecution arose, existing at the time the indictment was procured, which might induce a reasonable and dispassionate man to believe that the plaintiff was guilty of said charge, and to induce such a man to undertake the prosecution of the plaintiff for public motives; yet, if the jury shall find that before the arrest and trial of the plaintiff, the defendant had received additional information, sufficient to satisfy the mind of a reasonable and dispassionate man that the plaintiff was not in fact guilty of said charges, and if they shall further find that notwithstanding such information, the defendant afterwards procured the arrest and prosecution of the plaintiff, and endeavored to procure his conviction under said indictment, then in the absence of sufficient proof to the contrary, the jury may find that said prosecution was malicious, and the plaintiff is entitled to recover.

5. If the jury find for the plaintiff the measure of damages is such an amount as the jury may find will compensate the plaintiff for his actual outlay and expenses about his defence in the criminal trial, and for his loss of time and for the injury to his feelings, person and character, by his imprisonment and prosecution ; and the jury may also, if they find said prosecution to have been pursued by the defendant for his private ends, and with reckless disregard to the rights of the plaintiff, give such punitive damages as they may think proper to award for such conduct on the part of the defendant.

The defendant offered six prayers, the first and third of which were granted by the Court (DOBBIN, J.,) and the second and fourth were conceded by the plaintiff—the others were as follows :

5. That if they shall find that the defendant, in reference to the institution and prosecution of the criminal charge complained of, acted *bona fide* and without malice, under the professional advice and direction of his counsel, Col. Mosby, believing such advice to be sound, he is not liable and the plaintiff cannot recover in this action, even although Col. Mosby's advice may not have been sound, and although, but for such advice, the defendant would have had no probable cause for his action.

6. That the questions decided between the plaintiff and the defendant, in the proceeding in Virginia, upon the bill filed by the defendant, of which the record has been read to the jury, are to be taken as finally settled and concluded between the parties, and no longer open to controversy, and the Court having determined in that case that the transaction between the plaintiff and defendant, out of which said controversy and the criminal proceedings arose, and with which the present suit is connected, was altogether fair on the part of the defendant, and was not tainted by fraud or usury as the plaintiff in that case contended, it is no longer competent for the plaintiff to

set up in argument or otherwise, or for the jury to find as an element of their verdict, that said transaction was otherwise than fair and honest on Cooper's part, as the said Court has pronounced it.

The Court granted the first, second, fourth and fifth prayers of the plaintiff, but rejected his third because of the absence of any sufficient evidence in the cause tending to show any design on the part of the defendant to accomplish any private end of his own, by means of the prosecution referred to in said prayer. The Court rejected the fifth prayer of the defendant as offered, but granted the same with the words "*concealing no material facts from him, and*" interposed between the words "Mosby" and "believing," in the fifth line of the prayer.

The Court likewise rejected the sixth prayer of the defendant, because whilst the legal validity of the claim of the defendant to be paid the $11,000, secured by the deed of trust to Rasin, is conclusively established by the decree in Virginia, and is not open to impeachment in this case, yet the facts and circumstances attending the original transaction, to the extent to which they may shed light upon the conduct and motives of the parties, in relation to the matters involved in this suit, are open to all fair analysis, comment and argument before the jury.

The defendant at the trial objected to the prayers of the plaintiff, because they were not only erroneous in point of law, but were without any sufficient legal evidence in the cause to support them.

The defendant also objected to the modification of his fifth prayer, because there was no sufficient legal evidence in the cause, of any such concealment as referred to in the said modification.

The Court gave the following instruction of its own accord :

I instruct the jury, that "probable cause," as used in these instructions, means the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the defendant, that the plaintiff was guilty of the crime for which he was prosecuted.

Whereupon the defendant excepted to the granting of the first, second, fourth and fifth prayers of the plaintiff, and to the refusal of the Court to grant his fifth and sixth prayers as offered, and to its modification of his fifth prayer, and also to its additional instruction granted of its own accord.

The verdict and judgment were for the plaintiff, and the defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and ROBINSON, J.

*L. L. Conrad* and *S. Teackle Wallis*, for the appellant.

*1st Exception.*—The question to Col. Mosby, the allowance of which was the subject of the first exception, ought to have been excluded. It was founded on a false assumption of what the witness had stated in chief, and it required him to explain something which he had not stated. It assumed that he had advised Cooper as to Utterbach's guilt, "with *all the facts* before him," and then asked him to recapitulate those facts, whereas he had proven that his opinion was based exclusively on the facts he had heard from Rasin and had found out for himself. He did not profess to have known "all the facts."

Besides, (and this was the substantial objection to the question,) it was not pertinent to the issue, to enquire or prove upon what facts the witness had based his opinion, because, whatever they were, he had received none of them from Cooper. If Cooper had stated the facts to

him, it would have been perfectly competent for the appellee to test Cooper's good faith, by ascertaining from the witness whether Cooper had told him all the facts, or the real facts. But, as Cooper never stated a single fact to him, and he advised Cooper, voluntarily, and without a word or enquiry from Cooper, directly or indirectly, on the subject, as was proven and is not disputed, the relevancy of the question propounded is inconceivable. Whether Col. Mosby had or had not found out all the facts, by his own enquiries, or by the information he derived from Rasin, had nothing to do with the case, because neither the good faith nor the professional accuracy of Col. Mosby was in issue. The suggestion that when Mosby saw Cooper in person, the latter ought to have told him all the facts, and that the question to Mosby was proper, in order to find out whether or not he had done so, is susceptible of two obvious replies. In the first place, Mosby had given Cooper the advice in regard to Utterbach's guilt, through Rasin and by letter, three months before he saw Cooper in person; and, secondly, there is not the slightest evidence tending to show that the personal interview was of Cooper's seeking, or that Cooper consulted Mosby on the subject, or that the latter had any conversation with Cooper, except to reiterate to him ("of his own accord," as he states,) precisely what he had previously volunteered to tell him. On the contrary, Mosby proves positively, that he was never consulted by Cooper, or by any person for him, at any time, as to the matter of Utterbach's criminal liability.

*On the Prayers.*

1. The first prayer of the appellee could not otherwise than mislead the jury. It is not easy for even a professional mind to understand what is meant by an instruction that a defendant is liable to be sued if the jury shall find certain facts, provided they shall find certain other

Cooper *vs.* Utterbach.

facts, not enumerated, which may be necessary to render him so.

There is an obvious confounding of the legal liability to be sued, with the actual liability to the plaintiff for damages in the particular action.

2. The Court refused to grant the third prayer of the appellee, because there was no evidence of "any design on the part of the appellant to accomplish any private end of his own," by the criminal prosecution of the appellee, and yet the Court in the same breath granted the appellee's fifth prayer, allowing the jury to find, if they saw fit, in assessing the damages, that the said prosecution had been "pursued by the appellant for his private ends."

It is admitted that these plainly contradictory statements of the legal position and effect of the evidence would have justified a reversal, under our decisions, if they had been contained in two instructions granted, but it is insisted that as the contradiction arises through the granting of one prayer and the rejection of another, which latter thus did not go to the jury, there was no harm done. Surely this is not to deal seriously with the exception. If the Courts delivered their opinions out of the hearing of the jury, there might be some foundation for the distinction taken. But where a Court rejects a prayer, for the reason that it puts facts to the jury of which there is no evidence, and the judge not only assigns that reason, publicly, in the presence of the jury, but puts it in writing, as was the case here, to be taken as part of his ruling, it is hard to understand how the jury can avoid being bewildered, when he proceeds to instruct them that they may give punitive damages, provided they find the very facts of which he has already said, in their presence, that there is no legal evidence. It is no answer, to say that the former of the two prayers involved was wrongfully rejected. That question is not before this

Court, because the rejection is not appealed from. But, even if it were, it could not affect the point, here under discussion, which does not depend on the legal correctness of either of the Court's rulings, but merely on the admitted fact that they are contradictory and cannot be reconciled, and must have misled the jury.

3. After the Court had granted the appellee's 2d prayer, defining "probable cause," it was error to volunteer another and different definition of its own. One definition at a time, of a legal term, is quite as much as a jury can be expected to understand. And the instruction volunteered was of itself, eminently calculated to mislead them, besides.

"I instruct the jury," says the Court below, "that 'probable cause' as used in these instructions, means the existence of such facts and circumstances as would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the defendant, that the plaintiff was guilty of the crime for which he was prosecuted."

Obviously, the Court should have said—"the existence, *and knowledge by the defendant*, of such facts and circumstances" or "a reasonable mind acting on *those* facts." Either charge would have expressed the idea, without which the definition is faulty; for the existence of facts would amount to nothing, unless the defendant knew them and based his belief upon them.

4. In cases of malicious prosecution, it is the duty of the Court, not to submit facts to the jury, as in ordinary causes, merely because they may tend to prove the affirmative of the issues joined, but to determine, for itself, and say to the jury whether a case of want of probable cause is made out. The rule in such cases is anomalous, but it is well established. *Panton vs. Williams,* 42 *E. C. L. Rep.,* 634; *Walker vs. S. E. Railway Co.,* 5 *Com. Pleas, (Law Rep.)* 644; *Lister vs. Perryman,* 4 *House of Lords,* 521, 542; *Rex vs. Stratton,* 1 *Campb. N. P.,* 549, *n.; Carpenter vs. Sheldon,* 5 *Sandf.* 96-7; *Baldwin vs. Weed,*

17 *Wend.*, 224, 232; *Willans vs. Taylor*, 6 *Bingh.*, 183; *Wheeler vs. Nesbitt*, 24 *How.*, 544; *Cecil vs. Clarke*, 17 *Md.*, 508; *Boyd vs. Cross*, 35 *Md.*, 194.

Upon the facts, there was no such case of malice or want of probable cause as the Court should have submitted to the jury, and the appellee's first, second, fourth and fifth prayers should have been rejected.

5. But, whatever may be the view of this Court upon the preceding points, it is submitted that the rejection of the appellant's sixth prayer cannot be sustained. That prayer asked the Court to instruct the jury that the questions decided by the Circuit Court of Fauquier County, Virginia, in the Chancery record which was in evidence, were to be taken as finally settled, between Cooper and Utterbach, ahd no longer open to controversy, and the Fauquier Court having determined that the original transaction between Cooper and Utterbach was altogether fair, on Cooper's part, and untainted by fraud or usury, it was not competent for the appellee to set up the contrary, in argument or otherwise, or for the jury to find the contrary as an element in their verdict. The Superior Court conceded the conclusiveness of the Fauquier decree as to the legal validity of the claim established by it, but rejected the prayer, because it held the appellee entitled to review the facts and circumstances of the original transaction, for the purpose of shedding light on the conduct and motives of the parties as to the matters here in suit. The Court held these facts and circumstances "open to all fair analysis, comment and argument before the jury." What analysis was "fair" was not determined, but was left to the discretion of counsel. Practically, this amounted to ruling, that although the original transaction had been conclusively adjudged to be honest, fair and valid, the appellee was entitled, nevertheless, to argue that it was a fraudulent, dishonest and usurious imposition on Utterbach. It was accordingly, so argued

with great ability and effect, and the large damages found were the result.

If there is any elementary proposition clear, it is supposed to be that which establishes the absolute conclusiveness, *inter partes*, of the judgments of Courts of competent jurisdiction, upon questions litigated before them. *Marsh vs. Pier*, 4 *Rawle*, 288—9; *Outrain vs. Morewood*, 3 *East.*, 356; *Sturdy vs. Jackaway*, 4 *Wallace*, 175; *Herman on Estoppel, secs.* 81 *to* 84; *Bigelow on Estoppel*, 40; *McKinzie vs. B. & O. R. R. Co.*, 28 *Md.*, 174—5.

Any such question says this Court, in the last cited case, "once tried, all litigation of that question, between the same parties should be closed forever."

Every fact essential to the adjudication is concluded, as fully as the thing directly decided, and whether arising directly or collaterally in the subsequent litigation. *Herman on Estoppel, secs.* 80, 83.

If the facts or matters were essential to the judgment, it is not necessary that issue should have been taken upon them. They are as fully concluded as if put directly in issue. *Ibid, sec.* 83.

In the Fauquier equity suit, the one only question, between Cooper and Utterbach, was the validity of the original contract between them, out of which the present and all their controversies grew. Utterbach disputed its validity, on two grounds only. He averred in his answer, that it was fraudulent and usurious. Upon these two averments, and none other, was issue joined between them, and the Fauquier Court submitted distinct issues on those two points only, to a jury, which found for Cooper on both. The Court approved the finding, and decreed for Cooper upon it. About all this, there is no dispute possible, and the Fauquier Court states it in these words: "The issue tried by the jury was, whether or not there was fraud or usury practiced by the plaintiff (Cooper,) on the defendant Charles (Utterbach,)

and the verdict exonerates the plaintiff from that charge. As between these two parties therefore, the right of Cooper is clear." There is no color in the record, for the intimation that the question between Cooper and Utterbach, was at all as to the priority of Cooper's lien over the other incumbrances on the mortgaged property. Not only was this not the case, but a glance at the answer of Utterbach will shew, that he not only admits, but strongly asserts and contends for the priority of Cooper's claim, if valid. Nay, more, Utterbach insists in his answer, that he had kept faith with Cooper, and had fully secured him his promised priority. The very brief and argument of the appellee here, has relied on the fact of Cooper's thus obtaining his priority, and Utterbach not disputing it, as evidence of the good faith and innocence of the latter throughout. Indeed, as the Chancery record shows, not only was the question of priority not mooted between Cooper and Utterbach, in fact, but it could not possibly have been mooted, for it was one in which Utterbach had no interest. The validity of the claim was all that concerned him. The question of priority arose between Cooper and the other incumbrancers only. They only had any interest in disputing it, and they and no one else, joined issue with him upon it. These then being the facts, patent on the face of the record, and not open to controversy, the questions of fraud and usury in the original transaction were closed forever, as between the parties here, not by incidental and implied, but by express and positive adjudication, in terms. To permit the appellee's counsel to reopen them, or treat them as still open for argument, and to argue on them to the jury, that Cooper had been guilty of fraud and usury, and to establish malice, was, therefore, a plain subversion, it is submitted of an indisputable, wise and beneficial rule of law. A much greater injustice could hardly have been done

the apellant, for having the right to presume, that questions once closed could not be re-opened, he was not, and could not be prepared or expected to try over again, the old issues already settled in Fauquier before a jury of Utterbach's own people.

It cannot be necessary to consider how the Fauquier record was put in evidence, for that could have nothing to do with its legal effect or conclusiveness when in. It was produced by the appellee, and admitted without objection, or limitation. It was therefore, fully before the Court and jury, as a foundation for the appellant's sixth prayer.

*Charles Marshall*, for the appellee.

The first prayer of the plaintiff below, was intended merely to instruct the jury as to the facts which would be sufficient to connect the defendant with the criminal prosecution in such wise as to render him liable to be sued, if the other elements of liability should be found to exist. 2 *Greenleaf's Ev.*, *sec.* 450 ; *Wheeler vs. Nesbitt*, 24 *Howard, S. C.*, 549 ; *Boyd vs. Cross*, 35 *Md.*, 194.

The second prayer of the plaintiff requires the jury to find—

. 1st. That the plaintiff was indicted, tried and acquitted of the charge.

2d. The connection of the defendant with the prosecution.

3d. That there was no probable cause for the prosecution.

4th. That if the jury find that there was no probable cause, they may in the absence of proof to satisfy them to the contrary, find that the prosecution was malicious.

As to the correctness of the 1st and 2d branches of this prayer, there can be no question. 2 *Greenleaf on Ev.*, *sec.* 449, 450.

. The third branch of the prayer, assumes that it is the province of the Court to decide what probable cause

means, and of the jury to decide whether the facts exist to prove that there was no probable cause. It also assumes that the burden of proof of want of probable cause, in such an action, is on the plaintiff. As to the duty of the Court, and that of the jury, with reference to probable cause, see 2 *Greenleaf on Ev., sec.* 454, *and cases cited, and Boyd vs. Cross,* 35 *Md.,* 194.

No question can be raised as to the correctness of imposing upon the plaintiff the burden of proving the absence of probable cause. The same instruction is reiterated in the first and third prayers of the defendant which were granted. The only remaining question as to this branch of the prayer, is the definition of probable cause which it contains.

This definition must be considered, in connection with the Court's own instruction, defining probable cause. This instruction became necessary because the first and third prayers of the defendant had failed to define probable cause. The definition of probable cause contained in the plaintiff's second prayer and that given in the Court's instruction, are correct. *Wheeler vs. Nesbitt,* 24 *Howard,* 552 ; *Munns vs. Dupont,* 3 *Wash. C. C. R.,* 31; *Foshay vs. Ferguson,* 2 *Denio,* 617 ; *Cabiness vs. Martin,* 3 *Devereux,* 454 ; *Cecil vs. Clarke,* 17 *Md.,* 524 ; *Boyd vs. Cross,* 35 *Md.,* 194.

The 4th branch of the plaintiff's second prayer, leaves the jury at liberty to find malice from the absence of probable cause. That they might do so is abundantly shown by the authorities, and by reason. *Cecil vs. Clarke,* 17 *Md.,* 524 ; 1 *Hilliard on Torts,* 464 ; *Blunt vs. Little,* 3 *Mason,* 102 ; *Wheeler vs. Nesbitt,* 24 *Howard,* 551 ; 2 *Greenleaf on Ev., sec.* 453 ; *Boyd vs. Cross,* 35 *Md.,* 194 ; *Turner vs. Walker,* 3 *G. & J.,* 386.

The third prayer of the plaintiff was refused upon the ground, that the Court did not consider that there was sufficient evidence that the defendant undertook the prosecution to accomplish any private end.

The fifth prayer of the plaintiff, however was granted, and it is contended by the defendant's counsel that it should have been rejected, for the same reason that the third prayer was refused, because it is supposed to submit to the jury to find that the prosecution was for a private end. There was abundant evidence to have warranted the granting of the third prayer, as well as the fifth, but there is a manifest difference between them which might have justified the Court in granting the fifth, even if it should have thought that there was no sufficient evidence to support the hypothesis of the third prayer. There was evidence to sustain the fifth prayer, besides the evidence of malice which the proof of absence of probable cause alone would supply. Malice means doing an act without just cause, or from any improper and indirect motives. *Jones vs. Gwin, Gilbert's Cases,* 130; *Haddrick vs. Haslop,* 12 *A. & E.,* (*n. s.,*) 267; *Mitchell vs. Jenkins,* 1 *B. & A.,* 594; *Commonwealth vs. Bonner,* 9 *Met.,* 410; *Wren vs. Heslop, and Haddrick vs. Heslop,* 12 *Jurist,* 600; *Willans vs. Taylor,* 6 *Bingham,* 188, 189; *Turner vs. Walker,* 3 *G. & J.,* 386.

Upon examining the plaintiff's fourth prayer, it will be seen that a distinction is taken between the *institution* of a criminal prosecution, and the *persistence* in it, and it is asserted that the jury may find malice from the persistence of the defendant in the effort to convict the plaintiff, although there might have been probable cause in the inception, if they found that before the arrest and trial of the plaintiff, the defendant had received additional information, sufficient to convince a reasonable and dispassionate man that the plaintiff was not in fact guilty. In other words, persistence in a prosecution after the prosecutor knows or believes it to be unjust and unfounded, is as much proof of malice as the original setting on foot of a prosecution with like knowledge. *Burnap vs. Albert, Taney's Dec.,* 244; *Honeycut vs. Freeman,* 13 *Iredell,* 320; 1 *Hilliard on Torts,* 475.

The third prayer of the plaintiff relates to the *inception* of the prosecution, the fifth prayer relates to the persistence of the defendant in pursuit of the plaintiff.

There might be probable cause for the institution of a prosecution, and yet the prosecutor, from obstinacy, malice, ill will, pride of opinion, or a desire to escape the apprehended consequences of his own mistake, might persist in endeavoring to secure the conviction of the party accused, after he had become, or ought reasonably to have been, satisfied that the charge was erroneous. Any of these motives for persistence would be private and not public motives, and would taint the prosecution with actual malice.

The fifth prayer of the plaintiff, is unobjectionable, so far as it relates to damages strictly compensatory. 2 *Greenleaf on Ev.*, sec. 456. And it is believed to be equally correct, so far as it relates to punitive or exemplary damages. *Sedgwick on Damages*, 39 ; *Snively & Keys vs. Fahnestock*, 18 *Md.*, 392 ; *Ridgely vs. Bond & Wife*, 17 *Md.*, 23 ; *Hewlett vs. Cruchley*, 5 *Taunton*, 277 ; *Ogden vs. Gibbons*, 2 *Southard*, 518 ; *Schindel vs. Schindel*, 12 *Md.*, 122 ; *Cromwell vs. Owens*, 7 *H. & J.*, 60 ; *Harker vs. Dement*, 9 *Gill*, 17 ; *Tillotson vs. Cheatham*, 3 *Johnson*, 56 ; *Moore vs. Schultz*, 31 *Md.*, 423 ; *The Amiable Nancy*, 3 *Wheaton*, 558 ; *Woert vs. Jenkins*, 14 *Johnson*, 352 ; *Walker vs. Smith*, 1 *Wash. C. C. R.*, 152 ; 1 *Hilliard on Torts*, 465.

The first four prayers of the defendant raise the question not merely of the existence of probable cause, which was all that the defendant's case required, but they distinctly (especially the second and fourth prayers,) submit to the jury to try again the issue of guilty or not guilty. Such a plea, that is a plea that the plaintiff was in fact guilty, notwithstanding his acquittal, would dispense with any proof of the absence of probable cause. 2 *Greenleaf on Ev.*, sec. 454.

These prayers certainly leave no room for the jury to doubt as to the conditions of the plaintiff's right to recover, and taken in connection with those of the plaintiff, they certainly cover the ground entirely, if they be not in fact too favorable to the defendant, and there was no error in the instructions under which the jury considered the questions presented by these prayers.

The remaining exception as to the prayers, is taken to the Court's modification of the defendant's fifth prayer.

The Court modified the fifth prayer so as to instruct the jury that the advice of counsel in order to protect the defendant must not only have been followed *bona fide* and without malice, but that *no material fact* should have been concealed in taking the opinion of counsel. It is not the mere *omission* of a material fact through inadvertence or ignorance of its importance, but it is the *concealment* of it, according to this modification, which would prevent the advice of counsel, obtained by such concealment, from affording a defence. Assuming that there was evidence of such concealment, the modification was correct. *Blunt vs. Little,* 3 *Mason,* 102; *Hewlett vs. Cruchley,* 5 *Taunton,* 277; *Snow vs. Allen,* 1 *Starkie,* 502; *Ash vs. Marlow,* 20 *Ohio,* 119.

But the fifth prayer as offered, and even as modified, should not have been granted. It assumes that the mere following of the advice of counsel, *bona fide,* and without malice, will protect a man in instituting a criminal prosecution without regard to his own belief of the guilt or innocence of the party accused, and even if without that advice, he would have had no probable cause.

Counsel may advise that such and such facts constitute an offence, or evidence of it, and the facts may exist, and the party receiving the advice may believe it to be entirely sound, and it may in fact be sound advice, yet the party who takes the opinion of counsel may himself believe the accused to be innocent. The *belief* of a party as to the

guilt of the accused is most material in such cases. It has been decided that he will not be protected if other counsel give contrary advice. *Stevens vs. Fassett,* 14 *Shepley,* 206.

Should he be protected if his own belief is that the accused is innocent, notwithstanding all that counsel (in whom he confides fully so far as the soundness of his legal opinion is concerned,) may tell him? 2 *Greenleaf on Ev.,* Sec. 455; 1 *Hilliard on Torts,* 473; *Addison on Torts;* 592.

The reasons and authorities cited in support of the Court's modification of the defendant's fifth prayer, apply equally to the exception to a question propounded to Col. Mosby on cross-examination, being the defendant's first bill of exceptions.

Mosby had stated that with all the facts before him, he had advised the defendant that the plaintiff was guilty. He also had stated that he had learned the facts that transpired in Baltimore at first from J. M. Rasin, and subsequently from the defendant just before the presentment was made by the grand jury in March, 1868. The question excepted to, was asked in order to ascertain what statement of facts had been made to Mosby, upon which he gave his opinion, and unless it be held that the advice of counsel, irrespective of the facts communicated to him, will protect the defendant, the question was properly allowed. If it was proper that the witness should state, as the question asserts that he did state, that he gave his opinion with all the facts before him, surely, on cross-examination, the witness might be required to give particularity to his general assertion.

The point as to whether erroneous advice, honestly given and *bona fide* believed and followed, will protect, is not raised by the exception, but only whether advice based upon an imperfect and unfair statement of facts, will protect.

With reference to the defendant's sixth prayer, which asks the Court to instruct the jury as to the legal effect of the Chancery Record and decree offered in evidence, the Court was right in rejecting it, and g ranting the instruction contained in the reasons assigned for the refusal.

The prayer asserts that the Virginia decree establishes that the original transaction between the parties was "altogether fair on the part of the defendant." The decree certainly establishes conclusively that the transaction was so far fair on the part of the defendant, as to entitle him to the decree, but it nowhere finds that it was altogether "fair" in every sense, so as to preclude comment or argument upon the facts of that suit, so far as those facts may go to show the motives of the parties. This suit, moreover, cannot be said to be connected with anything decided by the Virginia Court, except so far as the circumstances out of which that suit arose may tend to throw light upon the question of motive in this case.

The decree certainly does not, and ought not to preclude the counsel of the plaintiff in argument, or the jury, from adverting to the facts as they stood at the time of the institution of the prosecution, in order to find evidence of the defendant's motives. The bargain, to say the least of it, however fair and valid for the purposes of the decree, was hard and oppressive. It was denounced as fraudulent and usurious by the plaintiff's answer in Chancery, filed two weeks before his arrest. Is it possible that if the evidence should indicate that the filing of this answer was in any way the cause of the arrest of the plaintiff, his counsel in argument, may not endeavor to show the fact?

Are not Courts constantly obliged to give effect to legal rights which they do not regard as well founded in conscience?

Could it not be argued that Shylock's bond was harsh, cruel and not "altogether fair," without bringing into

question its legal validity? The instruction given by the Court secures to the defendant every right he acquired by the decree, and informs the jury that such right cannot be impeached. If the original circumstances of the case will throw any light upon the motives of the defendant, may they not be examined in argument, notwithstanding the decree has fixed their mere legal effect for the purposes of the chancery suit? The Court did all that the defendant could ask when it instructed the jury that nothing could be said against the validity of the decree itself, and that the rights it secured to the defendant could not be impeached.

Moreover, the instruction asked for precludes the plaintiff from commenting upon any facts upon which the Court may have relied as *reasons* for its decree. If those facts illustrate properly the present case in any particular, it can hardly be contended that the decree is of such virtue and effect as to render the *reasons* assigned by the Court for its decision, sacred and unquestionable. There are more cases than one in our own Reports, in which this Court have affirmed judgments, while differing with the Court below as to its reasons. *Oberndorff, Trustee, vs. The Union Bank*, 31 *Md.*, 126, is one of these cases; a decree or judgment is only conclusive as to the rights established by it, and not as to the reasons upon which it is based.

If there was evidence to show the want of probable cause, the jury might infer malice from that fact alone, and it cannot be said, that if they had proof of *want of probable cause*, there was not evidence of malice, even if there were no other evidence of malice except that furnished by want of probable cause. But there was other evidence of malice, as disclosed by the record.

The jury had before them two distinct and different versions of the circumstances out of which the prosecution arose. The criminal prosecution arose from a loan

made by the defendant. to the plaintiff, in July, 1866, and whether there was evidence of probable cause or not, will be found to depend upon the question which of those two versions the jury believed?

If there was competent legal evidence before them to establish the plaintiff's account of the circumstances of the loan, the jury could not well avoid finding that there was not the least pretence for the criminal charge, or in other words, they must have found a total want of probable cause. But besides this, there was evidence before them to justify them in disbelieving the defendant's version of the affair, and if they did disbelieve it, they were justified not only in finding that there was no probable cause, but also that the defendant had set up an unfounded account of the circumstances, in order to protect himself, thus establishing the fact that he knew there was no probable cause, and endeavored to fabricate it.

BOWIE, J., delivered the opinion of the Court.

The exceptions brought up by the appeal in this case, were taken in an action for malicious prosecution, instituted by the appellee, against the appellant, in the Superior Court of Baltimore City.

The general issue was entered, and the parties agreed "that all errors of pleading be waived, and either party be permitted to prosecute or defend, on any evidence in the cause applicable to any state of the pleadings."

The appellee to maintain the issue on his part, offered in evidence a certified copy of a requisition from the Governor of Maryland, on the Governor of Virginia, accompanied by a record of the indictment and proceedings of the State of Maryland against him, charging him with obtaining money and stock of the appellant by false pretences, and showing his arrest, submission, and trial by the Court; the finding of not guilty, and judgment that he be discharged. The indictment was found

at January Term, 1868, of the Criminal Court of Baltimore City, and the finding and judgment thereon rendered at May Term following.

The appellee also offered in evidence, certain proceedings and depositions, from a duly certified transcript of the record of an Equity suit, in the Circuit Court of Fauquier County, Virginia, instituted the 7th of February, 1868, by the appellant against the appellee and others, as defendants. The bill in this case charged that the appellant loaned the appellee in July, 1866, eleven thousand dollars, payable in two years, for which he took the appellee's note for the principal, and four notes for the interest to accrue, and as security for the same, the appellee executed a deed of trust on certain lands in Fauquier County, Va. The bill further charges, that "During the pendency of the negotiation of the loan, the appellant was informed there was a prior deed of trust on said land, executed by the appellee, to one Phillips, to secure a debt from the appellee, to his father Armstead Utterbach, who was dead, and that letters of administration were granted on his estate, to the appellee. As the value of the land on which Utterbach, (the appellee,) proposed to secure the loan from your orator (the appellant,) was about equal to the amount of money he desired to borrow, your orator declined advancing any sum upon it until satisfied that it was clear of all incumbrances."

The bill then charges certain acts and declarations of Utterbach, in his own right, and as administrator of Armstead Utterbach, by which he pretended to extinguish the prior incumbrance, and induced the complainant to believe it was released, and insisted the said acts amounted to a release, and prayed the lands might be sold to satisfy the appellant's debt.

The appellee's answer admitted the execution of the notes mentioned in the bill, but denied the appellant had

loaned him $11,000; on the contrary, he averred that the money loaned was $4,980.17, and the balance of the consideration, was 86 shares of Navassa Phosphate stock, fraudulently represented by the appellant to be worth 55 per cent., and which he was induced to take at 70 per cent., making in the whole $6,020, which made up the consideration of the note of $11,000.

He admits that at the time of the negotiation, his real estate was encumbered by the deed of trust to Phillips, to secure six several bonds to Armstead Utterbach's estate, only three of which were due, the rest having been discharged, and was also encumbered by several judgments to a large amount, and these encumbrances he was required to remove; that he was advised he had the legal right as administrator, to release the deed of trust, and took the necessary steps to effect a release.

With regard to the judgments, he made an arrangement with his creditors, that their respective amounts should be deposited in a Baltimore bank, and they were paid out of the $4,980, aforesaid.

The answer of Charles T. Green, administrator *de bonis non* of Armstead Utterbach, was filed claiming priority of lien under the deed of the appellee to Phillips, etc.

By agreement, commissions were issued to Baltimore, and the depositions of various witnesses in relation to the negotiation of the loan between the appellant and the appellee, were taken and returned.

Numerous depositions were also taken by the appellant and the appellee, in the State of Virginia.

Issues were directed by the Court to a jury, to inquire whether fraud or usury was practiced by the appellant on the appellee, which being found for the former, the Circuit Court on the 23d of September, 1871, decreed that the appellant was entitled to subject the real estate conveyed by the appellee to Robert W. L. Rasin, by his

deed of trust, to the satisfaction and discharge of the debt thereby secured.

The appellee having further proved by the State's Attorney for Baltimore City, that the requisition for the appellee was issued at his instance, upon the application of the appellant, who gave his version of the circumstances of the offence, thought himself aggrieved, and that the law had been violated; and was eager to have the appellee brought to justice, further proved by the same witness, that at the criminal trial, facts favorable to the prisoner were brought out in the testimony for the defence, and possibly on the cross-examination of the State's witnesses, (though of this last he had no recollection,) which facts had not been previously known to witness. "Cooper and Ridgely told witness that the plaintiff had not relieved the lien, and had not given defendant an unincumbered title. This was when they saw witness before the issuing the requisition."

The plaintiff, (the appellee,) having rested, the appellant read certain depositions and proceedings from the Chancery Record, ("which was read on both sides, at the pleasure of counsel, without objection," says the bill of exceptions,) and proved by Col. John S. Mosby, that he was a member of the bar of Fauquier County, Va., and employed by the appellant, to enforce his rights under the deed of trust to Rasin, set forth in the Chancery Record. After detailing his connection with the case, and proceedings in prosecuting it, Col. Mosby said, "he examined and ascertained all the facts connected with the case in Virginia for himself, and from them, and James M. Rasin's statement of the facts of the original transaction between plaintiff and defendant, witness came to the conclusion that the plaintiff, (the appellee,) had obtained the appellant's money and stock, under false and fraudulent pretences.

"The *defendant did not*, nor *did Jas. M. Rasin consult witness on this point*, but only employed him to enforce

defendant's lien, and witness himself, *of his own accord,* volunteered to say to Rasin, and he thinks he wrote to defendant, that in his opinion, plaintiff had laid himself open to a criminal prosecution for false pretences.''

The witness further testified, that ''to the best of his recollection, he filed the bill in the Chancery case, a short time before the March rule day of the Fauquier Circuit Court; which rule day was the first Monday in March. The next day after filing it, (probably towards the close of February, 1868,) witness came to Baltimore, and went to see defendant, to whom he repeated orally the opinion in regard to plaintiff's criminal liability, which he had expressed to Rasin, and also, he thought to defendant himself, by letter, the November before.''

The witness further stated, '' that the evidence against the plaintiff in the criminal trial did not conflict or differ in any particular with that of the same witnesses, given in the Chancery proceeding here in evidence, upon the matters involved in the criminal case, and *that the facts proven by the State on the criminal trial, were substantially the same as those shown by the depositions of the same witnesses in the Chancery Record.* Either in chief, on the part of the State, or on cross-examination of the State's witnesses, *all the facts came out on which witness had formed his own opinion as to plaintiff's guilt,* and which appear in the Chancery Record, in the depositions of the same witnesses, without any thing to the contrary.''

On cross-examination, the plaintiff's counsel then propounded to the witness the following question, stating at the same time, its object was to ascertain whether all the facts had been stated to witness, viz:

''You have stated that, with all the facts before you, you advised Captain Cooper (the defendant) that Utterbach had been guilty of obtaining money under false pretences; please state what were the facts upon which that advice was based?''

To which question and the admissibility of the matters enquired of, the defendant objected, for the reason, among others, that the correctness of the opinion of witness was not in issue, nor were the reasons or grounds on which he based it, but only the fact that he had formed and expressed it to the defendant.

The Court overruled the objection, and allowed the question to be asked and the answer to go to the jury, which forms the ground of the first exception.

It is obvious from the nature of the action, which requires proof of want of probable cause, and malice, to sustain it, that the testimony of the witness in his examination-in-chief, (in the particulars which have been quoted,) was given to rebut the presumption of malice, by showing that the defendant, in instituting the prosecution for which he was sued, had proceeded in good faith, upon the advice of counsel learned in the law, given upon a full representation of the facts.

"It has been doubted (says a learned author) whether this defence can be set up where the party omits to state to his counsel, a fact well known to him, but which he honestly supposed was not material—or omits, through ignorance, to state a material fact which actually existed. And it is well settled, that he must show that he communicated to such counsel, all the facts bearing upon the guilt or innocence of the accused, which he knew, or by reasonable diligence could have ascertained." 1 *Hilliard on Torts*, 438 ; *Ash vs. Marlow*, 20 *Ohio Rep.*, 119 ; *Bliss vs. Wyman*, 7 *Cal.*, 257 ; *Potter vs. Seale*, 8 *Cal.*, 217.

The object of the question excepted to, was to test the good faith of the appellant, by ascertaining whether he or his agents had disclosed all the facts bearing upon the guilt or innocence of the accused, in his possession, in his consultation with his legal adviser, and this could only be effected by allowing some such question as that propounded and excepted to.

The theory of the appellant, that the correctness of the opinion, or the reasons or grounds on which he based it, were not in issue, would be correct in a case where all the facts were divulged ; the better opinion being, where such is the case, the prosecution is not liable to an action for a malicious prosecution, even if the facts did not warrant the advice and prosecution. See *Walter vs. Sample,* 25 *Penn. Rep.,* 275 ; *Hall vs. Suydam,* 6 *Barb.,* 83.

But the advice of counsel cannot protect where there has been a *"suppressio veri,"* or *"suggestio falsi."*

The suggestion, that there was no evidence that Cooper had ever made any communication to Col. Mosby, and therefore the question could be no test of Cooper's good faith, in conferring with Mosby, proves too much. If it be true, that Cooper, neither by himself nor agent, made any statement of the facts which came to his knowledge, touching his transactions with the appellee, he could not claim the benefit of Mosby's advice; for they could only stand in the relation of counsel and client after having consulted either in person or by agent. If he consulted through the medium of a third person, it was as important to know what had been conveyed through that medium, as if communicated in person, since the omission of any important fact, in such consultation through the medium, would be as fatal to the client as if he had failed personally to disclose it.

The question, however, was not confined to facts communicated by Cooper, but was general, and comprehended all means of information.

It may be, as argued by the appellant, that the assumption on which the question was founded, was not literally accurate, yet it was substantially so.

The pith and marrow of Col. Mosby's evidence was, that after full investigation of the facts in Virginia, for himself, and information of the facts attending the loan in Maryland, from Jas. M. Rasin, defendant's agent, he

had expressed to the defendant the opinion that the plaintiff was liable to prosecution for obtaining money, etc.;, under false pretences. This was sufficient to warrant the question on cross-examination of the witness by the appellee's counsel, requiring him to state "what were the facts on which his advice was based?" as by specifying those, the facts not disclosed, (if any) would negatively appear. For these reasons, we think the ruling of the Court below, on the first exception, was right.

After the testimony was closed, the appellee offered five prayers, to all of which the appellant objected, because they were not only erroneous in point of law, but without any sufficient legal evidence to support them.

The first, second, fourth and fifth of the appellee's prayers were granted, and the third rejected.

The appellant offered six prayers, the first and third of which were granted, as submitted; the second and fourth conceded; the fifth granted with modifications, and the sixth refused.

The Court of its own accord, gave an additional instruction explaining the words "probable cause." To which action of the Court, in granting the prayers of the appellee, refusing and modifying those of the appellant, and granting the additional instruction, *"sua sponte,"* the appellant excepted, which constitutes his second exception.

Taking up the points in the order presented in the appellant's brief, the appellant's sixth prayer will be the next subject of consideration. This prayer virtually proposed to exclude from argument, and the consideration of the jury, all the facts developed in the record of the case of the appellant against the appellee, and others, in the Circuit Court of Fauquier County, on the ground that the questions decided in the case, were to be taken as finally settled and concluded between the parties, and no longer open to controversy; and the Court having

determined in that case, that the transaction between the plaintiff and defendant, out of which said controversy and the criminal proceedings arose, and with which the present is connected, was altogether fair on the part of the appellant, and not tainted with fraud, or usury, as the appellee contended, it was no longer competent for the plaintiff to argue, or the jury to find otherwise, than as the Court had pronounced it.

"The principle upon which judgments are held conclusive upon the parties, requires that the rule should apply only to that which was *directly in issue*, and not to everything which was incidentally brought into controversy during the trial." 1 *Greenleaf on Evidence, sec.* 528.

The matter directly in issue in the case decided in Fauquier Circuit Court, was the right of the appellant to a lien on certain lands therein, in preference to all other creditors, and to have the said lands sold, which issue was decided in the appellant's favor, and to that extent, the record was conclusive. In the course of that suit, many collateral matters were introduced, numerous witnesses were examined touching the conduct and character of the appellee in other transactions.

It was agreed in the cause, as we have seen, that errors in pleading be waived, and either party be permitted to prosecute or defend, on any evidence in the cause applicable to any state of the pleadings.

The depositions and proceedings in the Chancery Record were read, (according to the bill of exceptions,) on both sides at the pleasure of the counsel without objection. The record was not offered, or used by either side, merely to prove the fact of the decree, nor were the depositions used to prove what had been testified to, by any particular witness in the cause, who was since dead or disqualified; but it would seem, the depositions were used by each side, as a substitute for the oral examination of wit-

nesses, not then before the Court, who had been examined in the Chancery cause on the several matters involved in said cause, which were also the subject of investigation, in the criminal prosecution, and the action for malicious prosecution now under review.

They thus became original testimony, on which the counsel were at liberty to make such comments and the jury to form such conclusions, as the facts warranted, without regard to the final decree in the case.

As the action of the Criminal Court in Baltimore, acquitting the appellee, would not, if offered in evidence in the Chancery cause, pending in Virginia, have established conclusively any other fact, than his acquittal of the charge; so the record and proceedings in Virginia, did not establish any fact but those directly in issue, the right of the complainant therein to his prior lien.

Neither the conduct nor character of the appellant or appellee was directly in issue in the Chancery cause, and matters collaterally involved were mere incidents. "Neither the judgment of a Court of concurrent nor exclusive jurisdiction, is evidence of any matter which came collaterally in question, though within its jurisdiction; nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment." 1 *Greenleaf on Ev.*, sec. 528; 2 *Kent's Com.*, 119, 121.

The appellant's third point is, that the action of the Court below in rejecting the appellee's third prayer, "because of the absence of any sufficient evidence in the cause tending to show any design on the part of the defendant to accomplish any private end of his own, by means of the prosecution referred to in the said third prayer" is inconsistent with its action, in granting the appellee's fifth prayer, by which the jury were authorized to find that said prosecution was pursued by the appellant for his private ends.

It is argued that, if there was no evidence to warrant the hypothesis in the third prayer, there was a like absence of evidence to sustain that hypothesis in the fifth. This is not a case of conflicting instructions like that referred to in 13 *Md.*, 85, by the appellant. In that case, an instruction had been *granted* at the instance of the appellant, which was excepted to by the appellee, but not brought up by appeal, and a prayer of the appellant's rejected which was inconsistent with that previously granted. In reviewing the action of the Court below, this Court said "the Court did right in the rejection of the defendant's last prayer, in regard to the standard of damages. The Court had previously given an instruction on this subject, in its character much more liberal, than the defendant in law had a right to ask. Inasmuch as that instruction is not before us on this appeal, we decline the examination of the principle contained in it. To have given the instruction embraced in the last exception, would not only have been clearly erroneous, but to give contradictory instructions on the same subject, a procedure wholly inadmissible." *Cumberland Coal & Iron Company vs. Tilghman*, 13 *Md.*, 85.

In the present case the Court below rejected a prayer of the appellee and granted another, supposed to be obnoxious to the objection for which the former was refused. The rejected prayer of the appellee could have no influence properly on the minds of the jury; it was shut out from their consideration by the action of the Court, and therefore no conflict could ensue.

But the objection that the fifth prayer has no evidence to sustain it, still remains to be answered. The appellee insists there is abundant evidence to sustain the hypothesis, that the prosecution was *pursued* by the defendant, for his private ends, as presented in the fifth prayer, if not, that it was *designed* by the appellant, to accomplish such private end, as presented by his third.

As the appellee's third prayer is not before us on this appeal, we cannot properly review the action of the Court below in rejecting it for the reasons assigned ; but considering the fifth prayer as directed to the measure of damages, to be estimated after the jury had found from the evidence that the prosecution was without probable cause and malicious, we think there was sufficient evidence, to warrant the Court in instructing the jury, they might give punitive damages, " if they found the said prosecution to have been *pursued* by the defendant for his private ends."

Assuming that the jury had found the prosecution originated without probable cause and in malice, they might legitimately, if not necessarily, find from the same premises, that the prosecution if pursued, was persisted in for some private end, as the want of probable cause and malice excluded all *public* motives.

If the appellant could only justify his prosecution of the appellee, (in the absence of probable cause,) by showing that he had acted in good faith, upon the advice of counsel, given upon a full representation of all the facts, as we have shown in our review of the first exception, it necessarily follows that the appellant's fifth prayer should not have been granted, as submitted, or as modified.    It is not sufficient as that prayer assumes that the defendant or prosecutor acted "*bona fide*" and without malice under professional advice, but the advice must be based upon a full disclosure of all the facts in the defendant's knowledge, or which with due diligence he might have known.    The omission of any material fact by design or otherwise, would render the advice nugatory. The appellant was not, therefore injured by granting a prayer more favorable to him than the law authorized.

The fourth point of the appellant is, that the first prayer of the appellee was calculated to mislead the jury, because it instructed them that certain facts rendered the

appellant liable to be sued, provided they should find certain other facts necessary to render him so liable; which was beyond the grasp of the jury and not law, if the instructions to which it refers, and which were subsequently granted, should turn out as contended by the appellant, to be unsupported by evidence.

It is conceded by the objection, that the first prayer referred to those subsequently granted, a construction necessarily following from the language of the proviso, which although not as specific and particular as it might be in referring to the succeeding prayers of the series, evidently pointed to them.

With this concession, the objection resolves itself into that raised by the fifth point, that there is no sufficient evidence in the record, tending to show want of probable cause, and malice, on the part of the appellant in the prosecution complained of.

The facts enumerated in these prayers as a basis on which want of probable cause and malice might be predicated, are "if the appellant aided and assisted *in procuring* the arrest and prosecution of the appellee in the Criminal Court, and aided in the said prosecution, and the appellee was indicted, tried, and acquitted in the Criminal Court, on said indictment, and there were no circumstances connected with the transaction out of which said criminal prosecution arose, which would induce a reasonable, dispassionate man to believe the appellee to have been guilty of the charge made against him, and to induce such a man to have undertaken such a prosecution from public motives, then there was no probable cause for said prosecution, and the jury might infer, in the absence of sufficient proof to satisfy them to the contrary, that said prosecution was malicious in law."

After the great latitude conceded by the parties to each other, by their agreement that either be permitted to prosecute and defend on any evidence in the cause, appli-

cable to any state of the pleadings, and the wide investigation of all the facts connected with the transactions between the plaintiff and defendant, and the proceedings in the criminal and civil courts in Maryland and Virginia, submitted to the jury, tending on the one hand to criminate the plaintiff, and on the other to exculpate the defendant, it required the exercise of very questionable power in the Court to reject the prayers of the plaintiff on the ground that there was no sufficient legal evidence in the cause to support them.

The prayers of the plaintiff submitted to the jury all the facts necessary to constitute a *prima facie* case, in a suit for malicious prosecution; defined with precision what was the essential evidence of probable cause, and the legal incident of malice to be inferred from its absence, leaving it properly to the jury to determine whether the evidence established the existence or absence of probable cause, and to draw the inference which the absence of probable cause, if found, warranted.

The last objection of the appellant is, that the definition of "probable cause volunteered by the Court, was obscure in itself and calculated to confuse the jury." The authorities say, it is the province of the Court to instruct the jury what facts constitute in law "probable cause," and leave it to the jury to find those facts.

In the case of *Boyd vs. Cross,* 35 *Md.,* 197, this Court declared "The want of probable cause is a mixed question of law and fact. As to the existence of the facts relied on to constitute the want of probable cause, that is a question for the jury; but what will amount to the want of probable cause in any case, is a question of law for the Court. The jury, in our practice, are always instructed hypothetically as to what constitutes probable cause, or the want of it, leaving to them to find the facts embraced in the hypothesis."

The definition of "probable cause" in the instruction granted "*sua sponte*" by the Court, is not in the exact

language adopted by the books, yet it is clearly comprehended by them, and consistent with the decided cases.

In *Cecil vs. Clarke*, 17 *Md.*, 524, Ch. J. LE GRAND adopted the language of *Greenleaf on Evidence, 2d vol.*, *sec.* 454, viz: "Probable cause for a criminal prosecution is understood to be such conduct on the part of the accused as may induce the Court to infer that the prosecution was undertaken from public motives."

In *Boyd vs. Cross*, 35 *Md.*, 197, this Court says, "Perhaps the most accurate definition of probable cause is that given by Judge WASHINGTON, in *Munns vs. Dupont*, 3 *Wash. C. C. Rep.*, 31, as being such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the party accused to be guilty."

The Court below, in the instruction given of its own accord, uses language identical in meaning with that adopted by Judge WASHINGTON.

In the prayer granted at the instance of the appellee, the definition is the same, as to the inducements to belief in a reasonable man, that the plaintiff was guilty of the charge made against him, with an additional qualification, "and to induce such a man to have undertaken such a prosecution from public motives."

The Court's spontaneous explanation of the meaning of the words "probable cause," may be regarded as a substitution, to that extent, of its last, for its former instruction, simplifying and conforming it to the most recent decisions.

In concluding our review of the several prayers of the appellee, excepted to by the appellant, it may be proper to add, they are not to be construed separately or collectively, unconnected with the prayers of the appellant, granted or conceded in the cause.

These imposed upon the appellee the burden of proving that the prosecution (the ground of the present action)

Cooper *vs.* Utterbach.

was instituted or prosecuted without probable cause and with malice, by the appellant, before he could claim a verdict. They declared that the acquittal of the appellee by the Criminal Court of Baltimore was only "*prima facie*" evidence of his innocence of the charge, notwithstanding which he might be found guilty of the offence charged in this case, and submitted to the jury the inquiry, whether the appellee had obtained of the appellant money or stock by false pretences.

The whole ground in controversy was covered by these instructions.

The law was expounded as favorably to the appellant as he was entitled to, leaving to the jury to find the facts involved in the several instructions, according to the evidence.

Where a full and fair trial has been had, this Court will not be hypercritical to discover technical defects in the rulings of the Court below.

Finding no error in the action of the Court on the several exceptions, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 30th January, 1873.)