SUTTON vs. McCONNELL and others.

MALICIOUS PROSECUTION: CITY ORDINANCE. *(1) Ordinance construed; wanton and obscene language. (2) What facts evidence of probable cause. (3) Whose advice stands for probable cause. (4) Civil or criminal action?*

APPEAL TO SUPREME COURT. *(5) Reversal as to some respondents, with affirmance as to others.*

1. A city ordinance provides a penalty, "if any person shall address any wanton or obscene language to another, or exhibit any wanton, lewd or obscene gestures or conduct." *Held*, that the expression "wanton or obscene language" is here equivalent to lewd or lascivious language; and that the words "long-legged son of a bitch," "long-legged pup," and "damned son of a bitch," do not come within the ordinance.

2. In an action for a malicious prosecution as for violation of a specified city ordinance, where it appeared that plaintiff, at the time to which the prosecution related, probably violated *other* penal ordinances of the city, but that the *facts stated by defendant* to the magistrate as the ground of

complaint, and upon which, by the magistrate's advice, the formal complaint was entered, clearly did not constitute a violation of such *other* ordinances, it was error to instruct the jury that, in determining whether there was probable cause for the prosecution, they might consider whether defendant acted under an innocent mistake as to *which* ordinance had been violated.

3. If a prosecutor fully and truly states the facts of which he complains, to some one admitted to practice in the courts as one learned in the law, and is advised by him that such facts constitute the offense for which he thereupon prosecutes, this stands for probable cause, and protects him in an action against him for such prosecution. But the advice of a justice of the peace, not being a person so admitted to practice, is not a protection.

4. An action for a violation of the city ordinance above described is a mere civil action for a penalty, and not a criminal prosecution; and a jury may be waived by stipulation therein.

5. On plaintiff's appeal from a judgment against him in an action against several defendants, this court may affirm the judgment as to one defendant, and reverse it as to the others. R. S., sec. 3071; *Cairns v. O'Bleness*, 40 Wis., 469.

APPEAL from the Circuit Court for *Columbia* County.

Action for a malicious prosecution. In June, 1877, a peddler in fantastic costume made his appearance in a street of the city of Columbus, in a wagon loaded with wares. He managed to collect quite a crowd of people about his wagon, and commenced selling his wares. The marshal of the city (the defendant *McConnell*), who was present, objected to his doing so until he should obtain a license for that purpose, as required by the city charter and ordinances. The peddler claimed that he had a state license, and that he could not lawfully be required to procure a city license. He continued to sell, and the marshal arrested him.

While this was occurring, the plaintiff, *Mr. Sutton*, who was passing in a buggy, drove near the peddler's wagon, and cautioned the marshal that he might get into trouble if he made the arrest. *Mr. Sutton* seems to have espoused the cause of the peddler in the controversy, and maintained that the position of the latter was correct. He claimed that as a

tax-payer he did not want the city subjected to the payment of damages for an illegal arrest.

The crowd increased to several hundred, and some of the people were quite excited and noisy, but in the main the performance seems to have been conducted good-naturedly. During these transactions, the defendant *Hanneman*, who was an alderman of the city, threatened to arrest the plaintiff. *Hanneman's* testimony on the trial of this action, as to what occurred at that time and subsequently, is as follows: "The crowd was very large and excited. *Sutton* was talking awful loud, and the people were cheering him. I said to him, 'I tell you as an alderman, if you don't stop your noise, you will be arrested.' He said to me, 'Will you? You long-legged son of a bitch — you long-legged pup — you nor no other damned son of a bitch can arrest me.' I went off then; I went to Mr. Adams' office to make the complaint. I told him what happened, and told him I thought there was some section in the city ordinance that forbade such language on the street. He told me to come up again, or something like that, and that he would look up the law. I went out, and came back in about twenty minutes, and he had the complaint ready for me to sign. I signed and swore to the complaint. I took the warrant and gave it to *Mr. McConnell*, who was in the room, and told him to arrest *Mr. Sutton*. . . . When I went to Adams' office, I stated the language *Sutton* had used, and that there ought to be some law or ordinance to prevent a man using such language as that in the streets of the city. *That was all I said.*" There is no other testimony as to the actual complaint made by the defendant *Hanneman* to the police justice, Mr. Adams, by whom the warrant for the arrest of the plaintiff was issued.

The formal complaint, drawn up by the police justice and sworn to by *Hanneman*, in terms charged *Mr. Sutton* with having violated section one of chapter six of the city ordinances. That section is as follows: "If any person shall address

any wanton or obscene language to another, or exhibit any wanton, lewd or obscene gestures or conduct, he shall, on conviction thereof before the police justice or any justice of the peace, be fined in a sum not exceeding one hundred dollars." A warrant for the arrest of *Mr. Sutton* was issued by the police justice on such complaint, and he was arrested by the marshal and brought before the justice. Two jury trials were had, resulting in disagreements; whereupon, by consent of the parties, the cause was submitted to the justice on the testimony theretofore taken, for his determination. The justice gave judgment of acquittal, and discharged *Mr. Sutton*. In the complaint in this action, it is charged that such prosecution was instigated by the defendants maliciously, and without probable cause therefor. The complaint originally contained a count for false imprisonment, but it was stricken out on the trial. The defendants answered separately, and each answer contains a general denial.

The plaintiff testified on the trial, that he addressed language to *Hanneman* very like that detailed by the latter; but he stoutly denied that he indulged in any profanity on the occasion. A large amount of evidence was introduced, tending to prove that the plaintiff, on the occasion in question, violated certain other city ordinances.

The circuit judge held, as a matter of law, that the language addressed by the plaintiff to *Hanneman* was not wanton or obscene within the meaning of the ordinance under which the prosecution was instituted, and that such prosecution was at an end; and he so instructed the jury. He also instructed them that, to entitle the plaintiff to recover, the evidence must show that the prosecution was malicious and without probable cause.

The jury were further instructed as follows: "But, gentlemen, I by no means instruct you that an honest mistake (if you so find it) upon the part of the person commencing the prosecution alleged to be malicious, or of the justice, as to which

section of the ordinances of a kindred kind or character, all designed for the police regulation or government of the city, and intended more particularly than some others for the preservation of decency and good order in its streets and public places [?], affects the question whether the arrest was with or without probable cause. If there was probable cause, and an honest belief that he was guilty of the violation of some of them, or one of them, and the action of the prosecutor had reference to the action, conduct or words making the probable cause, a mere mistake of the character alluded to, as to which ordinance was violated, or in bringing the action under the wrong ordinance, would not prevent the prosecutor from invoking to his aid the real or substantial cause that he had in mind in the prosecution, or enable a defendant thus guilty to claim that there was not probable cause for his prosecution."

Several instructions proposed on behalf of the defendants were also given, among which is the following: "If the jury find that the plaintiff, *Sutton*, though not guilty of a violation of the ordinance designated in the complaint, was guilty of an offense under some kindred ordinance of the city, and the defendants, having knowledge of all the facts, sought his arrest, they are not responsible for any error on the part of the magistrate in instituting proceedings under the wrong ordinance."

There was a verdict for the defendants; a new trial was denied; and, from a judgment pursuant to the verdict, plaintiff appealed.

*A. Scott Sloan*, for the appellant, contended, among other things, that it was no defense that plaintiff had been guilty of violating some other city ordinance of a kindred character to that specified in the complaint against him. In actions for malicious prosecution, the defense of probable cause applies only to the very crime charged in the complaint and warrant. Addison on Torts, § 583, note 1; 2 Greenl. on Ev., § 455; *Foshay v. Ferguson*, 2 Denio, 617; *Munns v. De Nemours*,

3 Wash. C. C., 31; *Wilmarth v. Mountford*, 4 id., 79. This is further obvious from the fact that plaintiff is required to prove, not only want of probable cause, but also an *acquittal.* There could be no acquittal of an offense with which he had not been charged. *Sales v. Briggs*, 4 Met., 421. Moreover, the complaint made to the police justice was for using obscene language, and would not have warranted an arrest under any ordinance. If protection is claimed on account of the advice of a magistrate or counsel, it must be shown that all the facts and circumstances were stated. Addison on Torts, § 856, note 1, and cases there cited. There is no pretense that any facts were stated except the language used by *Sutton* to *Hanneman.*

For the respondents, there were separate briefs by *G. W. Hazelton*, their attorney, and *L. S. Dixon*, of counsel, and oral argument by *Mr. Dixon.* They argued, among other things, that *Hanneman* had performed only the part of a good citizen in making the complaint, and that he had pursued the course usually pursued in such proceedings for small offenses, under city and village ordinances in this state. The practice is universal, in cities and villages, to enter complaint before the magistrate having authority to inquire into the offense, and to act upon his advice, without consulting a public prosecutor or taking the opinion of counsel. In many cases, as is understood to have been the case in the city of Columbus, there is no public prosecutor whom the complainant can consult. In such a case, where the complainant fully states the facts, and the magistrate prepares the complaint in the proper form, as he thinks, and issues his warrant, although he makes a mistake, conceiving that to be an offense which is not, or draws the complaint for the wrong offense, a real offense of a kindred nature having been committed, such mistake cannot operate to the complainant's prejudice. *Leigh v. Webb*, 3 Esp., 165; *Wyatt v. White*, 5 H. & N., 371; *Barber v. Rollinson*, 1 Cr. & M., 330; *West v. Smallwood*, 3 M. &

W., 418; *Brown v. Chapman*, 6 M., G. & S. (60 E. C. L.), 365; *Carrat v. Morley*, 1 Ad. & El., N. S., 18 (41 E. C. L., 417); *Whalley v. Pepper*, 7 C. & P., 506; *Delegal v. Highley*, 3 Bing. N. C., 950; 27 Me., 266; *Eastman v. Keasor*, 44 N. H., 518; *Bacon v. Waters*, 2 Allen, 401; *Hall v. Suydam*, 6 Barb., 83; *Von Latham v. Libby*, 38 id., 339, 350; *Stewart v. Hawley*, 21 Wend., 552; *Foshay v. Ferguson*, 2 Denio, 617; *Walter v. Sample*, 25 Pa. St., 275; *Sisk v. Hurst*, 1 W. Va., 53; *Swaim v. Stafford*, 3 Ired. Law, 289, and 4 id., 392; *Leaird v. Davis*, 17 Ala., 27; *Williams v. Vanmeter*, 8 Mo., 339; *McNeely v. Driskill*, 2 Blackf., 259; *Wilkinson v. Arnold*, 11 Ind., 45. Counsel further contended that the prosecution against *Sutton* was not ended, the action being criminal in form, and there having been no legal trial and discharge. *Clark v. Cleveland*, 6 Hill, 344; *State v. Lockwood*, 43 Wis., 403.

Lyon, J. A discussion of all the alleged errors assigned will not be attempted, for the reason that we find material error in the charge of the learned circuit judge to the jury, which must necessarily work a reversal of the judgment.

It was not claimed by any one on the argument of this appeal, that the language addressed by the plaintiff to the defendant *Hanneman* was a violation of the ordinance under which the plaintiff was prosecuted. It was virtually conceded by the learned counsel for the defendants, that it was not, and the jury were so instructed. The ordinance was intended to prevent lewd and lascivious language and conduct, and the words "*wanton or obscene*" are used therein in that sense. It does not extend to opprobrious and insulting language, which, although tending to a breach of the peace, is not lewd or lascivious.

The jury were instructed that, although the prosecutor and the magistrate were mistaken in thinking the plaintiff had violated that particular ordinance, still, if he had actually vio-

lated any kindred ordinance of the city, the defendants may show, in defense of this action, the real substantial cause *the prosecutor had in mind,* to defeat the claim that the prosecution was without probable cause.   And further, that the defendants, having knowledge of all the facts, are not responsible for the mistake of the magistrate.

The infirmity in the instructions is, that they ignored entirely the complaint actually made to the police justice, and held that the existence of probable cause for the prosecution was established by proof of certain acts of the plaintiff on the occasion in question, concerning which no complaint was made.

The only proof of the complaint actually made against the plaintiff is contained in the testimony of the defendant *Hanneman;* and he testified positively that he only stated to the justice the language which the plaintiff had addressed to him. He did not complain that the plaintiff had done any other act which violated any city ordinance.

Had the prosecutor complained truly to the justice that the plaintiff had violated any ordinance — as that he disobeyed, or incited the peddler to disobey, the lawful commands of the marshal, or made a riot or disturbance in the streets, or aided in gathering a crowd which obstructed the streets unlawfully, we might have a very different question to determine.   But no such complaint was made.   The complaint was for using opprobrious language to the prosecutor, which the magistrate erroneously believed was wanton or obscene within the meaning of the ordinance, and for that alone.   We think no case has been cited which holds that, in an action for malicious prosecution, probable cause therefor is established by proof that, although the act complained of was not an offense, the accused had committed an offense not complained of.

The case we have here is this:   The prosecutor complained to the police justice that the plaintiff had addressed insulting language to him — stating the language truly, — and desired to prosecute him if the language was a violation of any city

Sutton vs. McConnell and others.

ordinance. It was not in fact a violation of any ordinance, but the justice advised the prosecutor that it was a violation of the ordinance imposing a penalty for the use of wanton or obscene language. The justice drew up the complaint charging the plaintiff, in terms, with having violated that ordinance, and the prosecutor swore to the complaint. The justice thereupon issued his warrant for the apprehension of the plaintiff, who was arrested and brought before him, and was afterwards tried for the offense charged, and acquitted.

*Prima facie* there was an entire want of probable cause for the prosecution; but, to supply that want, the defendants, when sued for malicious prosecution, were permitted to show that, on the occasion of the speaking of the words, the plaintiff violated some ordinances of the city for the violation of which no complaint was made to the magistrate. And the jury were instructed, substantially, that such proof supplied the element of probable cause, and was fatal to the action.

Numerous cases, both English and American, were cited on the argument to support the proposition, that if a prosecutor fully and truly states the facts of which he complains, to his counsel or to a magistrate, and such counsel or magistrate advises him that the facts show that some particular crime has been committed by any person, he may safely rely on the advice, and prosecute such person for the crime. If it turns out that the counsel or magistrate mistook the law — if the facts stated do not constitute the crime charged, or any crime,— the prosecutor will be protected in an action brought against him for malicious prosecution. Stated in another form, the proposition is, that a full and honest statement of the facts by the prosecutor to his counsel or the magistrate, and the mistake of the counsel or magistrate as to the legal inference to be drawn from the facts, stand for probable cause, the existence of which is fatal to an action for a malicious prosecution. These cases are cited in the briefs of the learned counsel for the defendants, and it is unnecessary to repeat the citations. To these,

however, should be added *Bennett v. Black*, 1 · Stew. (Ala.), 494; *Wills v. Noyes*, 12 Pick., 324; *Dennis v. Ryan*, 65 N. Y., 385; *Smith v. Zent*, 59 Ind., 362; *McCarthy v. Kitchen*, id., 500.

The rule seems to be settled, that, under the circumstances above stated, the advice of counsel learned in the law is a protection to the prosecutor. But whether the same rule applies if the erroneous advice is given by a person not learned in the law, is a question upon which there is a conflict of authority. It seems to us that the question should be resolved in the negative. A prosecutor who procures the arrest of a citizen on a charge of crime which has not been committed, should not be allowed to shield himself from responsibility for his act on the plea that some person who is not presumed to be any more familiar with the law than he is, erroneously advised him that a given state of facts showed the accused guilty of the crime charged. In a doubtful case, the prosecutor should not rely upon such an adviser, but should obtain the advice of the proper law officer (in this case the city attorney), or of some counsel duly admitted to practice in the courts as one learned in the law. There is no evidence that the police justice belongs to this class.

The rule which we adopt is so clearly stated by Judge Cooley, in his late treatise on the law of torts, that we cannot do better than to quote his language. He says: "It may perhaps turn out that the complainant, instead of relying upon his own judgment, has taken the advice of counsel learned in the law, and acted upon that. This should be safer and more reliable than his own judgment, not only because it is the advice of one who can view the facts calmly and dispassionately, but because he is capable of judging of the facts in their legal bearings. A prudent man is therefore expected to take such advice; and when he does so, and places all the facts before his counsel, and acts upon his opinion, proof of the fact makes out a case of probable cause, provided the disclosure appears to

have been full and fair, and not to have withheld any of the material facts. But the advice must be that of a person accepted and licensed by the courts as one learned in the law and competent to be adviser to clients and the court; and if one chooses to accept and rely upon the opinion and advice of a justice of the peace or other layman, he may do so in aid of his own judgment, but it cannot afford him any protection." p. 183. The learned author cites the following cases, all of which, it is believed, sustain the doctrine of the text. *Olmstead v. Partridge*, 16 Gray, 381; *Beal v. Robeson*, 8 Iredell, 276; *Straus v. Young*, 36 Md., 246; *Burgett v. Burgett*, 43 Ind., 78; *Stanton v. Hart*, 27 Mich., 539; *Murphy v. Larson*, 77 Ill., 172.

The instructions which the judge gave the jury directly conflict with the above rule, and must, therefore, be regarded as erroneous.

II. It is claimed on behalf of the defendants, that the prosecution of the plaintiff for violating the ordinance is not ended, and hence that this action for a malicious prosecution cannot be maintained. This position is founded on the assumption that the police justice had no power to render judgment for or against the plaintiff until he had been acquitted or convicted by the verdict of a jury. On the authority of *The State v. Lockwood*, 43 Wis., 403, this might perhaps be a correct position, if the proceeding against the plaintiff for violating the ordinance is a criminal prosecution. But we think it is not. No law in force when that prosecution was instituted, made it a criminal offense to use wanton or obscene language within the corporate limits of the city of Columbus. The use of such language there gave the city a right of action against the offender to recover a prescribed penalty therefor. Under the charter of the city (Laws of 1874, ch. 57), an action to recover such a penalty may be commenced either by summons or warrant. But whether commenced by the one process or the other, the pleadings and judgment are the same. In either

case it is nothing more than a civil action to recover a penalty. Hence, it was competent for the magistrate, as in other civil actions, to act upon the stipulation of the parties, and to determine the action and render final judgment therein.

It may be here observed, that the late revision of the statutes contains the following salutary provision: " Any person . . . . who shall use in reference to and in the presence of another, or in reference to or in the presence of any member of his family, abusive or obscene language, intended or naturally tending to provoke an assault or any breach of the peace, shall be punished by imprisonment in the county jail not more than three months, or by fine not exceeding one hundred dollars." R. S., 1044, sec. 4398.

III.    We fail to find, in the bill of exceptions, any evidence tending to show that the defendant *McConnell* in any manner advised or instigated the prosecution of the plaintiff; and no good reason is perceived why the judgment should be disturbed as to him. But there appears to be some evidence tending to show that the defendant *Fox* instigated the prosecution. The statute (R. S., 800, sec. 3071) authorizes us to reverse or affirm the judgment as to all or any of the parties; and this necessarily includes the power to reverse as to one party and affirm as to another. *Cairns v. O'Bleness*, 40 Wis., 469.

The judgment of the circuit court must be affirmed as to the defendant *McConnell;* and as to the other defendants it must be reversed, and the cause remanded for a new trial.

RYAN, C. J.    It is not easy to understand whether the English rule, that mistake in law of the magistrate excuses a complainant, goes to probable cause or to malice, or to both. But, however the rule may be interpreted, there are reasons why it should not be held here; reasons which appear to make it quite inapplicable.

Justices of the peace in England are very generally chosen

Sutton vs. McConnell and others.

from large landed proprietors, generally graduates of one of the universities. There, in addition to general culture of high order, they have some instruction in the law. Blackstone's Commentaries were lectures delivered at Oxford to the students of that university; therefore called by Horne Tooke, "a good gentleman's law-book." And the clerks of the peace and justices' clerks are very generally attorneys. They are sometimes what are called stipendiary magistrates, who are understood to be very generally barristers.

Justices of the peace here are very generally laymen, rarely men of liberal education or of any knowledge of the law. They are perhaps not often more competent to form a judgment than those who bring complaints before them. For, while justices of the peace have generally higher fitness for the office in England than here, suitors before them here are very generally persons of better education and greater intelligence than there.

Though the office of justice of the peace is such here, as Coke said it was in England, " for the tranquility and quiet of the realm, as no part of the Christian world hath the like, if the same be duly executed," yet it is sounder in principle and safer in practice to hold here that mistake in law of a lay justice of the peace is not justification in actions for malicious prosecution.

*By the Court.* — Judgment affirmed as to the defendant *McConnell;* and as to the other defendants, judgment reversed, and cause remanded for a new trial.