# SAMUEL R. MAROWITZ

## vs.

# CHARLES D. LAND, CHARLES S. HAHN AND L. EDGAR BETSON, PARTNERS, TRADING AS HAHN & BETSON.

*Attachment: garnishee's defenses; prior transfer of property; good faith; burden of proof. Fraud: evidence; wide latitude; admission of improper evidence; when no cause for reversal.*

The admission of immaterial evidence that was not harmful to the exceptant does not constitute reversible error. p. 520

In order to defeat an attachment, by the defense that the property had been previously transferred by the debtor, it is necessary to show that the transfer was made in good faith, even though it had been for full consideration. p. 521

The law will not permit any man to assist in cheating another. p. 521

Where fraud is set up, a wide latitude is allowed in the admission of testimony throwing light upon the question of intent. p. 521

Upon an attachment being laid upon a stock of merchandise in a store, the defense was made that the stock had been sold and transferred to another party for its full value; the

question of the *bona fides* of the transfer was raised, and it was held that much of the evidence which was admitted might have been inadmissible if standing alone, but was admissible when considered and weighed in connection with other facts, as tending to assert the truthfulness and *bona fides* of the transfer.

pp. 521-522

*Decided April 4th, 1917.*

Appeal from the Circuit Court for Frederick County. (WORTHINGTON and PETER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Daniel S. Sullivan,* for the appellant.

*Arthur D. Willard* and *Edward J. Smith,* submitted a brief for the appellees.

PATTISON, J., delivered the opinion of the Court.

The appellees, Charles S. Hahn and L. Edgar Betson, partners, trading as Hahn & Betson, sued out of the Circuit Court for Frederick County an attachment against the appellee Charles D. Land and caused to be attached as his property a stock of merchandise and store fixtures in store-room No. 45 South Market street, Frederick, Maryland.

Samuel R. Marowitz, the appellant, filed his petition in said Court, claiming the property attached and alleging therein that Charles D. Land, trading as Charles D. Land & Co., was in the spring of 1915 a merchant in Frederick City and the owner of a stock of goods and fixtures in said storehouse;

that in the month of May of that year he became financially embarrassed and was declared a bankrupt, and receivers or trustees were appointed by the United States District Court to take possession of the assets of said bankrupt; that he thereafter effected a composition with his creditors, which was confirmed by said Court and his assets were turned over to one Rothchilds, who had procured for him the money by which he was enabled to effect such composition with his creditors; that Rothchilds turned over said assets to the Consolidated Skirt & Cloak Co., a body corporate of which Charles D. Land was president, and that the petitioner, the appellant, on or about July 22, 1915, bought of said corporation all of said stock of goods and fixtures in said storehouse in Frederick, Maryland, at and for the sum of $2,325, of which sum $1,000 was paid in cash, and the balance in or about ten days thereafter; that ever since then he has been the owner of said property so purchased of the Consolidated Skirt & Cloak Company, except so much thereof as has been sold in the ordinary course of trade, and he asked in his petition that the property be delivered to him by said Sheriff.

The answer to the petition is not set out in the record. The docket entries, however, show that issues were joined and that a jury impaneled to try such issues rendered a verdict for the defendants, upon which a judgment was thereafter entered. It is from that judgment that this appeal is taken.

In the trial of the case the claimant produced an agreement purporting to have been executed by himself and the said Charles D. Land, as President of the Consolidated Skirt and Cloak Company. This agreement was dated the 22nd day of July, 1915, and by it the Consolidated Skirt and Cloak Company agreed to sell to the said Samuel R. Marowitz, claimant, the said stock of goods, merchandise and fixtures in the storehouse at Frederick, "together with the good-will of said store and the lease of the premises," at and for the sum of $2,325, $1,000 of which was to be paid in

cash and the balance within ten days thereafter. The agree-. ment provided that upon the payment of said, sum of $1,000, Marowitz was to take possession of said property and proceed to sell the stock of goods in the usual course of business, upon the condition, however, that all sums received therefor should belong to the Consolidated Skirt and Cloak Co., and such proceeds were to be turned over to it, and Marowitz was "to get no title whatever thereto."

It was further provided in the agreement that the possession of said store and goods "was made upon the condition that the title of the property that was agreed to be sold to Marowitz should remain in said Consolidated Skirt and Cloak Company, and should Marowitz fail to pay the balance of the purchase money, to wit, the sum of $1,325, within ten days from the date of the agreement, the said company was authorized to "re-enter said store and take possession thereof," and all sums received in part payment of the purchase price for said property was to be retained as liquidated damages.

It was further provided that upon the payment of the said sum of $1,325 the Consolidated Skirt and Cloak Co. was to execute a bill of sale for the property mentioned in the agreement.

Marowitz also produced his check, dated July 22nd, 1915, upon the Old Town National Bank of Baltimore for the sum of $1,000, payable to the order of the Consolidated Skirt and Cloak Company, and his two subsequent checks of August 6th and August 27th of the same year, each drawn upon said bank and payable to said company, the first for $525 and the other for $110.06. The check for $1,000, he states in his testimony, was the cash payment under the agreement, the other two checks, amounting to $635.06, were further payments upon the purchase money, and the balance of the purchase money was paid by him, as he testified, in "customers' checks and cash," the last payment being on September 16, 1915, at which time he took from the Consoli-

dated Skirt and Cloak Company its receipt, signed by Land as President, acknowledging the payment of the balance of said purchase money, although it seems that the bill of sale provided for in the aforesaid agreement to be given to Marowitz upon his payment of said balance was never executed or delivered. The testimony of the claimant was to the effect that he bought this stock of goods and fixtures without ever having seen them; that upon taking possession of the storehouse and premises he did not have the lease of the premises assigned, or the license transferred, to him; that the rent thereafter so long as he held the store was paid by him through Charles Land, the lessee under the aforesaid lease; and when asked why he had Land pay the rent he answered, saying, "I give him the money, I didn't want to take over the obligation of the lease. I bought the lease, but did not want it to be taken in my name, to be responsible for two years' rent * * * I bought the lease, but did not want to go up to see the landlord."

Marowitz after the alleged purchase · did not remove to Frederick, but continued to live in Baltimore, and placed the management of the business with one Galley, who was in the employ of Land at the time of his adjudication as a bankrupt. Galley managed the business two or three weeks, when he was succeeded by Nathan Land, a younger brother of said Charles Land, and those who had served as clerks under Charles Land were continued as employees.

Marowitz visited Frederick only a few times between the 22nd of July and the date of the attachment in January following. Charles Land continued going to Frederick about once in every week, or once in every two weeks, as he had formerly done before his adjudication as a bankrupt. His visits were usually on Friday or Saturday, remaining over until Monday, and while there was in the store waiting upon customers as he had previously done. Upon these visits he was usually accompanied by his wife, and she too while at Frederick was employed in the store, and for her services

Marowitz said he paid her $5.00 a week, but it seems he did not pay the husband anything and could not account for his going there unless it was to see his brother, although on one or two occasions he accompanied Marowitz to Frederick, and was seen by Marowitz at such times at work in the store assisting in the sale of the goods.

The money representing the proceeds of sales at the store was first deposited in the name of Mrs. Land, and this continued until some time in September or October, when Marowitz, as he says, had it placed to his own credit.

Marowitz, as he testified, continued the business at Frederick, in the manner stated, until the 8th of November, when he disposed of the stock of goods, fixtures. and business to Nathan Land, and an agreement was produced containing the terms and conditions of such sale.

Nathan Land thereafter, as stated by Marowitz and himself, managed and continued the business in his own name until January 15, 1916, and as testified to by Marowitz and Nathan Land, the former again became "the absolute owner of the store and fixtures located at 45 South Market street, Frederick, Maryland."

Marowitz in his petition states very fully how the property passed from Charles D. Land & Co., bankrupt, to himself, naming those through whom it passed, and alleges that after taking possession of the store goods and fixtures under the alleged contract of July 22, 1915, he has since that time been the owner of said property, making no mention whatever of the sale and transfer of said property by him to Nathan Land, and it was upon his cross-examination that this alleged fact was first disclosed.

It will be observed that title to this property is alleged to have passed from Nathan Land to Marowitz on January 15th, only eleven days before the service of the attachment in this case.

The pleadings present the sole question, was the property attached, the property of the claimant?

It is sufficiently clear from the record that Marowitz's claim to the property was resisted upon the ground of fraud.

In the progress of the trial there were ten exceptions taken to the rulings of the Court upon the evidence and one to its rulings upon the prayers. The trial resulted in a verdict and judgment for the defendants.

There was no error in the Court's ruling on the first exception, for should the evidence admitted thereunder be regarded as immaterial, it was not harmful to the plaintiff; and we discover no error in the court's ruling in the second exception.

The third exception was to a question asked the witness, which, so far as the Record discloses, was never answered. The 4th, 5th and 6th exceptions were to the admission of the evidence of Edgar L. Betson, of the firm of Hahn & Betson, the attaching creditors. He was permitted to state that he was asked by Charles D. Land, who was at the time engaged in the sale of goods in said store-house and was acting in relation thereto as he had done prior to his adjudication in bankruptcy, to shelve the northern side of the store-house, and that at such time, as well as at other times after the 22nd day of July, 1915, when witness called upon him for the payment of the amount owing to him, he was told by Charles D. Land that he, Charles D. Land, would pay him and that he was running the business.

The 7th, 8th and 9th exceptions were to the evidence of G. O. Paxson, an electrical contractor of Frederick, who was allowed to testify without objection that he, after the 22nd day of July, 1915, "put on a new switch" and furnished Charles D. Land with lamps that were used in the store-house at No. 45 South Market street. He was then asked under objection in the 7th exception, had you any conversation with him as to who was to pay for the lamps, and he was permitted to answer, "Yes, sir;" Mr. Land said he would pay for them "as soon as the switch was put on," and also would pay the balance he owed him; in the 8th and 9th

exceptions he stated that at such time Charles D. Land told him he was conducting the business. Whetzel, the owner of the store-house, No. 45 South Market street, testified that in August, 1915, he distrained upon the stock of goods and fixtures in said store-house for rent due at such time, under his aforesaid lease with Charles D. Land, and that after the distress was laid, he with the sheriff, went to the said store-house where Land at the time was engaged in the sale of goods; the witness was then asked will you tell the Court and jury what he said on that occasion regarding the distraint? This question was objected to, and the objection being overruled; the tenth exception was taken. The witness answered, saying, he said, "Gentlemen, please do not keep so much noise; please do not talk so loud. I am afraid it will hurt my business." The rent was thereafter paid by Land to the sheriff and by the sheriff paid to witness.

The evidence admitted under these exceptions we think was properly admitted. It is essential to the validity of the transfer of the property to Marowitz that it was not only made on a good consideration, but that it was also *bona fide*. If it were not made in good faith it is void, although the grantee may have paid a full consideration therefor. The law will not permit one man to assist in cheating another. *Cooke* v. *Cooke,* 43 Md. 531, and the other cases there cited.

Where fraud is set up, as in this case, a wide latitude is allowed in the admission of testimony involving the fraudulent intent of the parties. As was said in *Cooke* v. *Cooke, supra,* "fraud assumes so many shapes and disguises that it can only be detected in many cases by a consideration of all the facts and circumstances surrounding the transaction, some of which when separately considered may seem trivial, remote and even disconnected. It is not easy, therefore, to draw a precise line separating facts such as are fairly admissible from others which ought to be excluded—the true test after all being whether they tend to throw light upon and explain the true nature of the transaction."

It may be that some of the facts admitted in evidence under the aforegoing exceptions, if standing alone would not ordinarily be admissible, but they become so when considered and weighed in connection with other facts found in the Record, which not only cast suspicion upon the *bona fides* of the transfer to Marowitz, but also assail the truthfulness of the claim made by him that said property was transferred to him and that he thereafter conducted and managed said business as his own.

The Court was asked by the first prayer of the plaintiff to instruct the jury that if they found the facts therein stated their verdict should be "for the claimant, for the property in controversy, in this case, although the jury should believe that said Charles D. Land subsequently to said 22nd day of July, 1915, told G. O. Paxson and others, as testified to by them, that said store and its goods and fixtures were his and that he was running the same, or anything to that effect, unless the jury shall further find from the evidence that said Marowitz heard such statements of said Land or knew he was making the same and did not contradict or refute the same and there is no evidence in this case from which the jury can so find."

In view of what we have said in discussing the exceptions to the admission of the evidence, it becomes unnecessary for us to discuss this prayer, and we think it, as well as the plaintiff's second prayer, was properly rejected.

The judgment appealed from will, therefore, be affirmed.

*Judgment affirmed, with costs to the appellee.*