DUNCAN *v.* STATE

[No. 148, October Term, 1947.]

*Decided May 19, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Vaughn E. Richardson* and *John L. Sanford, Jr.*, with whom was *William G. Kerbin, Jr.*, on the brief, for the appellant.

*J. Edgar Harvey, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *Franklin Upshur, State's Attorney for Worcester County,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

William B. Duncan, aged 82, of Pocomoke, indicted for assault and battery on Frank Willett on March 1, 1947, was tried and found guilty by a jury on October 23 in the Circuit Court for Worcester County. On the same day the two presiding judges entered judgment on the verdict and sentenced defendant to pay a fine of $500 and costs. He immediately paid the fine and costs. On October 28 he entered an appeal from the judgment.

The Attorney General suggests that the appeal should be dismissed because appellant, by paying the fine, waived his right to an appeal. In this country there is a conflict in the decisions on the right of a defendant in a criminal case, after he has been convicted and has paid the fine imposed upon him, to have the judgment of conviction reviewed on appeal. In a majority of the juris-

dictions where the question has arisen it has been held that a defendant, by voluntarily paying his fine, waives his right to obtain a review of the conviction by the appellate court. *Commonwealth v. Gipner,* 118 Pa. 379, 12 A. 306; *Leavitt v. People,* 41 Mich. 470, 2 N. W. 812; *People v. Melovicz,* 221 Mich. 620, 192 N. W. 562; *State v. Westfall,* 37 Iowa 575; *State v. Conkling,* 54 Kan. 108, 37 P. 992, 45 Am. St. Rep. 270; *Madsen v. Kenner,* 4 Utah 3, 4 P. 992; *State v. Cohen,* 45 Nev. 266, 201 P. 1027, 18 A. L. R. 864; *Washington v. Cleland,* 49 Or. 12, 88 P. 305, 124 Am. St. Rep. 1013; *Bergdoll v. United States,* 3 Cir., 279 F. 404. But it has been held by other courts that payment of the fine by the defendant does not constitute a waiver of his right of appeal. *Barthelemy v. People,* 2 Hill, N. Y., 248, 255; *Johnson v. State,* 172 Ala. 424, 55 So. 226, Ann. Cas. 1913E, 296; *State v. Winthrop,* 148 Wash. 526, 269 P. 793, 59 A. L. R. 1265. In *Commonwealth v. Fleckner,* 167 Mass. 13, 44 N. E. 1053, where the statute provided that allowance of exceptions should not stay execution of sentence, Justice Holmes said: "We should be slow to suppose that the legislature meant to take away the right to undo the disgrace and legal discredit of a conviction * * * merely because a wrongly convicted person has paid his fine or served his term. The fact that no indemnity is provided by this act is far from enough to lead us to that conclusion. Of course, the payment of the fine in accordance with the sentence was not a consent to the sentence, but a payment under duress."

In 1931 the Supreme Court of Indiana, while acknowledging that some courts had held that an appeal in a criminal case will be dismissed as moot where the appellant has satisfied the judgment, asserted that the better reasoning is with the cases to the contrary, and that the theory and result of these cases are more consonant with justice. In support of this view Justice Treanor said: "The right of reputation was early recognized in Anglo-American law, and the machinery of legal redress is at the disposal of any person to vindicate

his good name. * * * Thus it is clear that the law recognizes and protects the individual's interest in his reputation from defamation that imputes criminal misconduct, regardless of pecuniary damage; and it would seem absurdly inconsistent to dismiss as moot a proceeding initiated to clear one's reputation of the infamy and stigma resulting from an allegedly erroneous conviction on a criminal charge, even though the one seeking vindication cannot, for reasons of public policy, recover the amount of his fine and costs, nor compel the state to pay damages for his unjust imprisonment." *State ex rel. Lopez v. Killigrew*, 202 Ind. 397, 174 N. E. 808, 810, 74 A. L. R. 631.

In 1943 the United States Supreme Court in *St. Pierre v. United States*, 319 U. S. 41, 63 S. Ct. 910, 87 L. Ed. 1199, adopted the rule that the moral stigma of a judgment which no longer affects legal rights does not present a case for appellate review. In that case the petitioner for *certiorari* had been sentenced to imprisonment for five months for contempt of court, and he had served the sentence before *certiorari* was granted. It was held that the case was moot because a reversal of the judgment could not restore to him the penalty of the term of imprisonment, and he did not show that any further penalties or disabilities could be imposed upon him as a result of the judgment.

In 1946 the Supreme Court developed the law further in *Fiswick v. United States*, 329 U. S. 211, 67 S. Ct. 224, 230, 91 L. Ed. 196. Fiswick and other German nationals had been indicted for conspiring with Draeger, the German consul in New York City and leader of the Nazi party in this country, and other representatives of the Third Reich to defraud the United States by concealing and misrepresenting their membership in the Nazi party. He was found guilty but, although he had served the sentence of imprisonment imposed upon him, the Court refused to dismiss the *certiorari*. Justice Douglas, who delivered the opinion of the Court, explained that the conviction of an alien on the charge of conspiracy to defraud

the United States would seriously embarrass him in the event of deportation or naturalization proceedings, and would brand him as a felon with the possible loss of civil rights, such as jury service, voting and holding office, and therefore he had "a substantial stake" in the judgment of conviction which survived the satisfaction of the sentence.

On this appeal we are not called upon to decide whether appellant could recover the amount of the fine if he should be given a new trial and acquitted. But certainly he would have the right to seek its recovery. We hold that the payment of the fine did not deprive him of his statutory right of appeal since he still has a substantial stake in the judgment of conviction in view of our constitutional provision that the Governor has the power to remit fines and forfeitures for offences against the State. Md. Constitution, art. 2, sec. 20.

Appellant contends that the trial judges committed reversible error in refusing to strike out irrelevant testimony of William Mason, one of the witnesses for the State. Mason testified that it was on the afternoon of March 2 when he heard about the alleged assault. The State's Attorney asked him whether he heard Duncan make any remark about it. His answer was: "Well, yes and no. * * * He was talking to a bunch of men. He didn't mention no names." Six times the State's Attorney urged him to tell what he heard Duncan say. At first he indicated that he could not recall the exact words. But after the State's Attorney's requests, he stated: "I can tell you what he said. It doesn't apply to this case." The State's Attorney insisted upon an answer. He then testified: "Well, he said if he didn't die in the hospital, he would kill him when he came out." When the State's Attorney then inquired whether "that was said by this Mr. Duncan," he explained: "Mr. Duncan and four or five men were standing there. I don't know whether Mr. Duncan said it or who said it." Counsel for defendant moved to strike out the testimony, but the Court overruled the motion.

In a criminal prosecution for assault, any declaration made by the accused shortly before or after the assault indicating a desire to inflict violence upon the person assaulted is admissible in evidence to show malice. *Hodge v. State,* 26 Fla. 11, 7 So. 593, 595; *State v. Vance,* 29 Wash. 435, 70 P. 34. In the case at bar the witness testified that Duncan, the traverser, had made a threat to kill Willett, the prosecuting witness; but later he testified that he did not know who had made the threat. This statement therefore became wholly irrelevant. It is an elementary rule that evidence, in order to be admissible, must be relevant to the issues and tend either to establish or disprove them, and that evidence which does not tend to describe or explain the facts and circumstances of the case is inadmissible and should be excluded from the consideration of the jury. *Costley v. State,* 48 Md. 175. While irrelevant evidence will not require reversal where it appears that it was not material and prejudicial (*City of Baltimore v. Park Land Corporation of Baltimore,* 126 Md. 358, 366, 95 A. 33; *Marowitz v. Land,* 130 Md. 514, 520, 100 A. 783), the testimony in this case was so contradictory and irrelevant as to be likely to confuse and mislead the jury and prejudice them against appellant. We are, therefore, constrained to hold that the refusal of the trial judges to strike out the testimony was reversible error.

*Judgment reversed and case remanded for a new trial.*