## KENNEDY *v.* CROUCH
[No. 28, October Term, 1948.]

*Decided December 8, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*J. Robert Carey,* with whom were *Albert E. Brault* and *Richard H. Love* on the brief, for the appellant.

*Andrew W. Starratt, Jr.,* and *Alger Y. Barbee* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This is an action for malicious prosecution and false arrest. The suit was brought by James T. Crouch, of Silver Spring, a member of the bar of the District of Columbia and a claim adjuster for the United States Veterans Administration, against Dr. Thomas J. Kennedy, also of Silver Spring, a captain in the United States Navy.

Shortly before dark on May 28, 1947 Crouch and a neighbor, George W. Grimsley, visited Dr. Kennedy to ask him to sign a petition opposing an application to rezone a tract of land known as Carroll Springs. They found him working in shorts in the yard back of his home at 1203 Brookville Road. Crouch informed him that Grimsley represented the Woodside Knolls Citizens Association. Crouch testified that the doctor turned to his wife and told her to go into the house. He then asked Crouch to give him a cigarette. Crouch then said: "Mr. Grimsley will explain to you what the Association has in mind that would be to our disadvantage in the rezoning of Carroll Springs." The doctor retorted that he had no use for Citizens Associations, and they were wasting their time, and anything that a Citizens Association was for he was against.

Crouch then said: "Well, if you don't want to join for the Citizens Association, I am here representing the property owners themselves who are actively opposed to the rezoning. I am representing approximately seventy property owners who are not included in the Citizens Association." The doctor said he was also against the

property owners, as they thought they could run the whole neighborhood. Crouch replied that he was sorry he had taken that position, and remarked: "Some day you will want help from the Citizens Association and your neighbors, and you will be sorry if you don't go along with us now. You are the only one who has refused to go along." At that point Dr. Kennedy took off his working gloves, and Crouch thought he was going to strike him; but the doctor extended his hand and said: "Will you shake hands on who gets who first." The men shook hands, but the doctor then said: "I have told you, and it is no use to tell you any more. So don't come back again to ask me about rezoning." Thereupon Crouch exclaimed: "You are just a plain screwball!" Shortly afterwards, as he was leaving, he said: "Well, so long, screwball."

That evening Dr. Kennedy went to the Silver Spring police station and made a complaint to J. Kelly Magee, Justice of the Peace and Station Clerk of the Montgomery County Police. Magee testified that Dr. Kennedy informed him that he had some trouble with a man who had come to his house and was loud and boisterous. The doctor said that he did not know his name, but he knew where he lived. Magee advised him that he could get a warrant for the man's arrest, and gave him an application form to sign. Magee then requested a police officer to accompany the doctor to the address given. The officer, accompanied by the doctor, appeared at Crouch's door about 9 p. m. After Crouch had dressed, he went to the police station with the officer. Magee then asked Crouch for his name and address. He then wrote the name and address at the top of the form, and thereupon signed the warrant for Crouch's arrest. The warrant charged that Crouch, in violation of statute, entered upon the land or premises of Dr. Kennedy and did wilfully act in a disorderly manner by making loud and unseemly noises and profanely cursing, swearing, or using obscene language while thereon. After being at the police station about 15 minutes, Crouch was released on his personal bond to

appear for trial on the criminal charge. On June 3 he was tried and acquitted.

On August 29 Crouch entered the present suit in the Circuit Court for Montgomery County, and it came on for trial on November 19. The trial judge refused defendant's motion for a directed verdict, and on November 24 the jury rendered a verdict for $3,000 in favor of plaintiff. On March 8, 1948, the judge announced that he would grant a new trial unless plaintiff filed a remittitur in the amount of $1,600. On March 9 a remittitur for that amount was filed, and thereupon judgment was entered in favor of plaintiff for the sum of $1,400. Defendant appealed here from that judgment.

Defendant complains because the judge admitted in evidence certain details of the Carroll Springs rezoning plan and the petition opposing it. It is an elementary rule that evidence, to be admissible, must be relevant to the issues and must tend either to establish or disprove them, and evidence which does not tend to describe or explain the facts and circumstances of the case is inadmissible. But it is also an accepted rule that admission of irrelevant evidence, when not material and prejudicial, is not a ground for reversal. *City of Baltimore v. Park Land Corporation of Baltimore,* 126 Md. 358, 366, 95 A. 33; *Marowitz v. Land,* 130 Md. 514, 520, 100 A. 783; *Duncan v. State,* 190 Md. 486, 58 A. 2d 906. In this case the testimony relating to the plan for rezoning and the petition against it was germane to the controversy. Even though some of the details may have been immaterial, they could not have confused the jury, and their admission in evidence did not constitute reversible error.

Defendant also complains of a remark which Crouch's wife swore she made to the police officer while Crouch was getting ready to go to the police station. She said that when the officer asked her what all the trouble was about, she told him: "Kennedy must be crazy as a loon, because he had threatened to sue everybody on the street." Defendant's counsel promptly objected, and the judge said: "Yes, that will go out." It is urged that, even

though the judge ruled that the testimony would be stricken out, a prejudicial impression was lodged in the minds of the jurors that defendant was actuated by malice. At the trial below the judge plainly stated that Mrs. Crouch's remark would be stricken out, but there was no further challenge of the evidence, and no further ruling by the judge. Under our rules formal exceptions to ruling or orders of the trial court are no longer necessary. It is sufficient for all purposes for which an exception was formerly necessary that a party, at the time a ruling or order is made or sought, makes known to the court the action which he desires the court to take, or his objection to the action of the court and his grounds therefor. Rules of Court of Appeals, rule 17. However, while exceptions are no longer necessary, it is still necessary for the purpose of appeal that some timely objection be made and that the court rule upon the question. The Court of Appeals cannot decide any question in any civil or criminal case which does not plainly appear by the record to have been tried and decided by the trial court. Rules of Court of Appeals, rule 9. In the absence of such a ruling, there is nothing for this Court to review, and no basis for the contention that the trial court committed reversible error. We hold that where a party objects to evidence which has already been admitted, and the trial court rules that it will be excluded, the record, to be sufficient for basing reversible error thereon, must show that some further ruling was made or sought before the close of the case. *O'Connor v. Estevez*, 182 Md. 541, 546, 35 A. 2d 148; *Courtney v. State*, 187 Md. 1, 48 A. 2d 430; *Davis v. State*, 189 Md. 269, 55 A. 2d 702.

The main contention on this appeal is that there was no evidence legally sufficient to show that defendant acted without probable cause, and hence he should have been given a directed verdict. It is true that want of probable cause is the essential ground of an action for malicious prosecution, and the burden of proof is on the plaintiff to show that the defendant instituted the criminal proceeding against him without probable cause. The plaintiff

must also prove that the defendant was actuated by malice, and that the criminal proceeding was terminated in the plaintiff's favor. *Bannon v. Auger,* 262 Mass. 427, 160 N. E. 255; *Weiden v. Weiden,* 246 Mich. 347, 224 N. W. 345. It is recognized, however, that malice may be inferred by the jury from want of probable cause, but want of probable cause cannot be inferred from any degree of malice. *Stewart v. Sonneborn,* 98 U. S. 187, 25 L. Ed. 116, 119. So, if a person had probable cause for commencing a criminal proceeding, he has a good defense against a suit for malicious prosecution, although he may have been actuated by malice and the accused was acquitted. *Stansbury v. Luttrell,* 152 Md. 553, 556, 137 A. 339; *Parker v. Farley,* 10 Cush., Mass., 279; *McClafferty v. Philp,* 151 Pa. 86, 24 A. 1042; *Weiden v. Weiden,* 236 Mich. 347, 224 N. W. 345; *Saunton v. Goshorn,* 4 Cir., 94 F. 52.

In this case the justice of the peace who issued the warrant for the arrest of Crouch was also clerk at the Silver Spring station of the Montgomery County Police. If a person who is contemplating the institution of a criminal proceeding obtains the advice of counsel learned in the law and acts thereon, he is protected not only because the adviser can view the facts calmly and dispassionately, but also because he has the ability to judge the facts in their legal bearings. Proof that he placed the facts fully and fairly before his counsel and acted upon his advice is a good defense to the charge of want of probable cause. *Cooper v. Utterbach,* 37 Md. 282, 315; *Stewart v. Sonneborn,* 98 U. S. 187, 25 L. Ed. 116, 120. On the other hand, if a party who plans to institute a criminal proceeding acts upon the advice of a justice of the peace, such advice does not afford him any protection. It is not the function of justices of the peace to give legal advice. They may determine for themselves whether the information of the complainant justifies them in issuing a warrant, but they do so in the course of their duties, and not as a legal adviser of the complainant. *Beihofer v. Loeffert,* 159 Pa.

374, 28 A. 216; *Mauldin v. Ball,* 104 Tenn. 597, 58 S. W. 248; *Sutton v. McConnell,* 46 Wis. 269, 50 N. W. 415.

In a suit for malicious prosecution in Massachusetts, where the justice of the peace who had issued the warrant was called to testify that the defendant had asked him for his advice before instituting the proceeding, it was held by the Supreme Judicial Court that testimony that the defendant acted upon the advice of the justice of the peace, who was not an attorney at law, was not competent to prove probable cause. Chief Justice Bigelow said in the opinion of the Court: "The law wisely requires that a party who has instituted a groundless suit against another should show that he acted on the advice of a person who by his professional training and experience and as an officer of the court may be reasonably supposed to be competent to give safe and prudent counsel on which a party may act honestly and in good faith, although to the injury of another. But it would open the door to great abuses of legal process, if shelter and protection from the consequences of instituting an unfounded prosecution could be obtained by proof that a party acted on the irresponsible advice of one who could not be presumed to have better means of judging of the rights and duties of the prosecutor on a given state of facts than the prosecutor himself." *Olmstead v. Partridge,* 16 Gray, Mass., 381, 383.

Crouch was charged with violating that section of the Code which makes it a crime for any person to enter upon the land or premises of any other person and wilfully act in a disorderly manner by "making loud and unseemly noises," or by "profanely cursing or swearing or using obscene language while thereon." Code 1939, art. 27, sec. 132. It is conceded that there was no evidence that Crouch was guilty of "profanely cursing or swearing or using obscene language." Consequently the issue narrowed down to whether Dr. Kennedy had probable cause for believing that Crouch was guilty of disorderly conduct by "making loud and unseemly noises." The trial judge was clearly right in refusing to rule that

Crouch failed to produce any evidence legally sufficient to show want of probable cause. Crouch produced positive evidence that there were no loud and unseemly noises. He testified that he did not raise his voice at any time during the conversation. Grimsley testified that none of the conversation was louder than one ordinarily talks outdoors. Charles M. Wright, Dr. Kennedy's next-door neighbor, testified that, while he was in his back yard scarcely more than 100 feet away when Crouch and Grimsley were there, and could even hear some of the conversation, he did not hear any sounds that gave evidence of disorderly conduct.

Defendant contends, however, that calling Dr. Kennedy a "screwball" in the presence of others warranted a ruling by the judge that Crouch had made "loud and unseemly noises." Several decisions of the Supreme Court of New Jersey were cited. The New Jersey Disorderly Persons Act, R. S. 1937, 2:202-7, N. J. S. A., is not exactly like the Maryland statute. It defines a disorderly person as any person who utters "loud and offensive or indecent language." But even in New Jersey it is recognized that not every derogatory epithet addressed by one person to another constitutes offensive language. It has been held in that State, for example, that calling a member of a town council at a public session in the town hall a "bootlegger" is disorderly conduct, but calling him a "souphead" is not a violation of the Act. *In re Kirk*, 101 N. J. L. 450, 130 A. 569. On the other hand, in *State v. O'Donnell*, N. J. Sup., 200 A. 739, 740, it was held that the terms "rat" and "scum of the earth" are expressions of opprobrium and are "offensive language" within the meaning of the Act. In *Ruthenbeck v. First Criminal Judicial District of Bergen County*, 147 A. 625, 7 N. J. Misc. 969, a prosecutor was convicted of violating an ordinance of the borough of Bergenfield making it unlawful to utter "any loud, profane, indecent, lewd, abusive or offensive language in any public place." The complaint in that case was that the prosecutor had said to the police clerk in the borough police headquarters:

"You big muttonhead, do you think you are a czar around here?" In setting aside the conviction, the New Jersey Supreme Court held that a "muttonhead" is a dull and uninteresting person, and while the dignity of the police clerk may possibly have been ruffled by the epithet, nevertheless the language was not indecent, abusive or offensive.

There can be no denial that the word "screwball" is an epithet of disparagement. According to authorities on American slang, the word "screwball" has many synonyms, such as block-head, cabbage-head, dumbbell, galoot, goose, mutt-head, muttonhead, sap, saphead, and square-head. The term may signify either (1) a peculiar or eccentric person, like crackbrain, crackpot, crank, queer duck, queer fish, nut, queer potato, and queer specimen, or (2) a stupid or insane person, like batty, bug-house, crazy, boob, dippy, screwloose, and softhead. *Berry and Van den Bark, American Thesaurus of Slang*, secs. 396, 411, 433. The word "screwball" does not connote opprobrium or reprehensibility.

It is clear that it could not be ruled as a matter of law that there was probable cause for believing that Crouch was guilty of "making loud and unseemly noises." Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense with which he is charged. *Nance v. Gall*, 187 Md. 656, 669, 50 A. 2d 120, 126. What facts are sufficient to show want of probable cause in any case is, of course, a question of law for the court; but whether such facts are proved by the evidence is a question for the jury. *Cooper v. Utterbach*, 37 Md. 282, 317; *Campbell v. Baltimore & Ohio R. Co.*, 97 Md. 341, 344, 55 A. 532; *Stansbury v. Luttrell*, 152 Md. 553, 556, 137 A. 339; *Stewart v. Sonneborn*, 98 U. S. 187, 25 L. Ed. 116, 119. If the facts relied on to constitute probable cause, or the inferences to be drawn therefrom, are clear and undisputed, the question is one of law for the court; but if the evidence or inferences to be drawn there-

from are disputed, it becomes a mixed question of law and fact. *Nance v. Gall,* 187 Md. 656, 669, 50 A. 2d 120, 126.

It was admitted that Crouch was not placed in a cell in the police station, but merely stood in front of the rail to talk with the justice of the peace. The trial judge considered that the jury's verdict for $3,000 was excessive. The judge had the right to request a remittitur, or even grant a new trial. Defendant urges that the judgment of $1,400 is still more than it ought to be. But it is not for the Court of Appeals to change the award of a jury unless reversible error has been committed. We have no other course, therefore, than to affirm the judgment in favor of plaintiff.

*Judgment affirmed, with costs.*